BRIDGEPORT HYDRAULIC COMPANY *v.* TOWN OF STRATFORD

BROWN, C. J., JENNINGS, INGLIS, O'SULLIVAN and ROBERTS, Js.

Argued December 5, 1952—decided January 13, 1953

*Hugh A. Hoyt,* with whom, on the brief, was *Hugh C. Curran,* for the appellant (defendant).

*Philo C. Calhoun,* with whom, on the brief, was *Daniel F. Wheeler,* for the appellee (plaintiff).

JENNINGS, J. The defendant placed the property of the plaintiff in its 1945 grand list at $1,242,102. On appeal to the board of tax review, this figure was confirmed. The property was taxable at its "fair market value" in the defendant town under General Statutes, § 1759 (formerly Cum. Sup. 1935, § 366c). The plaintiff appealed to the Court of Common Pleas, which reduced the assessment to $720,000. The defendant appealed from this judgment. It attacked the finding, the conclusions and several of the rulings made.

The defendant states in its brief that sixty-one paragraphs of the draft finding "were, it is believed, admitted and undisputed facts and should have been found." This is the only reference in the brief to this assignment of error, and it was not alluded to in oral argument. Under these circumstances, we are under no obligation to search the 764-page record for supporting testimony. *Linahan* v. *Linahan,* 131 Conn. 307, 311, 39 A.2d 895. The assignment falls into the class of assignments of error which are not pursued in the brief and will be disregarded. *State* v. *Jones,* 124 Conn. 664, 665, 2 A.2d 374; Maltbie, Conn. App. Proc., § 165.

The second assignment claims that three paragraphs were found without evidence and the third that three paragraphs were of doubtful meaning. These assignments are without merit.

The fourth assignment attacked certain paragraphs of the finding as conclusions not supported by subordinate facts. The first group stated, in effect, that there was a market for the personal property of the plaintiff located and taxable in Stratford, that its fair market value on October 1, 1945, was $900,000, and that it ought to be assessed at $720,000, or 80 per cent of the fair market value,

the admitted basis of property assessment in Stratford. Whether these statements were conclusions or findings of fact is not free from doubt. The difficulty is one of terminology and is discussed at length in Maltbie, Connecticut Appellate Procedure, §§ 77-82. The dominant thought in this discussion is that the appellant must have a practical means of testing the validity of the statement in the finding, by whatever name called. The trial court was faced with the alternative of repeating the mass of facts on which the experts based their opinions and then coming to the stated conclusion or of finding the ultimate fact. It chose the latter course. The defendant is not harmed, because it has brought up the entire testimony by which the validity of the ultimate fact found can be tested. This method falls within the pattern described in Maltbie, Connecticut Appellate Procedure, page 109, where, under these circumstances, it is said: "[I]t is sufficient ordinarily to state the main fact and any proceedings for correction of the finding with reference to it would be upon the basis of the printing of the evidence in the record." As stated above, this was the course followed by the defendant. On the merits, the evidence of Mr. Fricker, a qualified expert who testified for the plaintiff, furnished abundant support for the findings in question.

The other group is placed among the conclusions in the second part of the finding and, except for one paragraph which restated the fair market value, detailed the factors considered by the trial court in reaching that figure. Such a discussion ordinarily appears in the memorandum of decision, but it afforded both parties a further opportunity of testing the correctness of the judgment. The position of the defendant was not harmed thereby.

Another assignment attacks certain of the bases of the trial court's conclusions on the ground that they were irrelevant. The defendant also complains because the trial court failed to consider other matters claimed by the defendant to be relevant. Most, if not all, of these claims depend on the rulings on evidence presently to be considered.

Before trial, the defendant filed a motion for disclosure. This sought information as to the quantity of water supplied and the revenue obtained. The denial of this motion fell fairly within the discretionary power of the trial court. *Kiessling* v. *Kiessling,* 134 Conn. 564, 568, 59 A.2d 532; and see *State* v. *Hayes,* 127 Conn. 543, 602, 18 A.2d 895.

The finding may be summarized as follows: The plaintiff is a Connecticut corporation supplying water to the defendant and adjoining towns. On October 1, 1945, it was the owner of personal property, consisting of pipes, meters, etc., located in Stratford and subject to taxation. The property was assessed on that date at $1,242,102. Its use as a water transmission and distribution system was its best and most valuable use, and its market value was dependent to a substantial extent on its availability for such use. It had a market value on October 1, 1945. The plaintiff has no definite records as to installations prior to 1901 but has made a reasonably accurate estimate that the average date of installation of its pipe prior to that date was 1893. The defendant's water supply is almost entirely drawn from a reservoir located outside of its borders. The historical cost of the system, including overhead, was $1,187,116.04. The reproduction cost new, depreciated at a reasonable rate, was, as of October 1, 1945, $1,103,191.40. Insofar as reproduction cost new was considered by the assessors, it was com-

puted on the purported cost of labor and materials in 1941. Had the plaintiff used that date, its reproduction cost would have been decreased not less than $120,000. From the plaintiff's experience, cleaning cast iron pipes to remove tuberculation was not sound practice. This determination was reasonable. The cost of labor and materials in 1945 was regarded by expert appraisers as inflationary and abnormally high. The fair market value of the plaintiff's property on October 1, 1945, considered as an operating distribution system, was $900,000. The assessors placed property in Stratford in the grand list at 80 per cent of its fair market value.

The court also found that the value of the plaintiff's property in Stratford on the lists of 1928, 1929 and 1930 was fixed by judgments of the Superior Court on tax appeals. Thereafter, through 1944, the assessments were computed on approximately the following formula. From the full value of the property on the last list there was deducted one year's depreciation at agreed rates; to the resulting figure was added the cost without overhead of property acquired since the immediately preceding assessment date; 85 per cent of this total became the assessment for that particular year. The plaintiff's list for 1944 on this basis was $699,285. This tax history was considered as evidence of fair market value only to the extent of the reasonably probable effect of such history on the minds of a willing buyer and a willing seller and upon the probable price which would have resulted from fair negotiations between them. In finding the value of the plaintiff's personal property, the court considered and weighed such elements as reproduction cost new, depreciation, obsolescence, historical cost as affected by depreciation and obsolescence, actual value and

fair market value placed on the property by experts and their opinion as to what a willing buyer would in all probability be willing to pay to a willing seller for this property, and all testimony relevant to all such facts. On these facts, the court reached the conclusion that the fair market value of the plaintiff's property for tax purposes was $720,000.

In view of the length of this record it has been necessary to define the issue with particular care. As has been intimated, the vital points are concerned with the rulings on evidence. Unless there was harmful error in this regard or in the application of rules of law, the finding is ample to sustain the conclusions reached. Although the rulings cover fifty-four pages of the printed record, the defendant's brief devotes only two pages to their consideration and cites only one case. This might also be held failure to pursue in the brief, but since, as stated above, the appeal turns mainly on these rulings, they will be considered. Because they are so numerous it will be necessary to deal with them in groups. This is the method followed by the parties.

Evidence was introduced by the plaintiff of judgments entered on tax appeals in 1928, 1929 and 1930. It went on to develop that thereafter a formula for the computation of the value of the plaintiff's property was devised and that it was used through 1944. The defendant claims only that this testimony was irrelevant and immaterial. Whatever force this argument may have is lost when the limited purpose for which the testimony was admitted is considered. The court found that the testimony was admitted only for its effect on the mind of a willing buyer. A buyer might well be more inclined to invest in a company which had apparently regularized its posi-

tion with the taxing authorities. All those elements which an owner could reasonably urge as affecting the fair price should be considered. *Andrews* v. *Cox,* 127 Conn. 455, 458, 17 A.2d 507. There was no error in this ruling.

DeVer C. Warner was vice president and treasurer of the plaintiff. He entered its service on January 1, 1928, and had been an active officer since 1933. During the last ten or fifteen years all the operations of the plaintiff had come under his observation, generally speaking. Through him the plaintiff introduced two charts in graph form, based on the company's records, showing the amount of pipe laid and retired. It also introduced schedules dealing with reproduction costs. The defendant objected to these exhibits because (1) the witness was not qualified, (2) they were based on hearsay and (3) they were inaccurate. The exhibits were based on company records. In view of Mr. Warner's long and varied service with the plaintiff, the court was fully justified in holding him qualified to introduce these exhibits. The qualifications of an expert are within the discretion of the trial court. *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A.2d 600. As to the second objection, "The mere fact that the opinion given by a witness as to value is derived from sources which would not in themselves be admissible in evidence does not render that opinion inadmissible . . . . Both of the witnesses derived their information from sources fairly trustworthy and both had had sufficient experience to co-ordinate and evaluate that information and so to come to a conclusion which the trial court might well hold worthy of consideration by the jury." *Vigliotti* v. *Campano,* 104 Conn. 464, 465, 133 A. 579; 2 Wigmore, Evidence (3d Ed.) § 665 (1). There is no

support in the defendant's brief for the claim that the information in the exhibits was inaccurate. The defendant takes nothing by this assignment.

An official of the defendant testified on direct examination by the plaintiff that the grand list increased four million dollars between 1944 and 1945. This would be a factor which might influence the mind of a willing buyer and was relevant for that reason.

Mr. Lord, assistant superintendent of the plaintiff, testified as to labor costs in 1941. This was relevant since the plaintiff's figures were based on 1945 rates and those of the defendant on 1941 rates.

Mr. Frank was offered as an expert by the defendant to testify that the work of cleaning pipes was a proper cost of maintenance. Since the plaintiff had determined that the operation was not desirable and, by inference, was therefore not utilized by it, the question, if answered, could not have had any importance. The ruling excluding the answer was at most harmless error. *State* v. *Hayes,* 127 Conn. 543, 603, 18 A.2d 895; *State* v. *Kurz,* 131 Conn. 54, 65, 37 A.2d 808; *State* v. *Parker,* 114 Conn. 354, 370, 158 A. 797. The single remaining assignment as to a ruling on evidence is without merit.

The last section of the defendant's brief is apparently devoted to the overruling of its claims of law. Insofar as they require consideration, they are disposed of by categorical findings. For example, the defendant claimed that the cost of interring the pipes should have entered into the reproduction cost. It was included. There is no finding that contractors' profits were not included in this cost, as the defendant claimed they should have been.

Finally, the defendant claims that the trial court

erred in failing to consider income earned by the property, as to which the plaintiff offered no evidence. The short answer is that the defendant offered none either. Our examination of the record, made necessary by the attack on the finding, shows that the books of the plaintiff must have been open to the experts and accountants of the defendant. If the defendant considered the point of importance, it could have developed it from those books. The answer probably is, as suggested by the plaintiff, that its operations in Stratford were not segregated from its general business of supplying water to many towns, including Bridgeport. The court, so far as appears, had neither evidence before it on the subject nor any offer of such evidence.

The trial court appears to have handled this mass of testimony with skill and, above all, patience. It applied an approved definition of market value. Its memorandum reads in part as follows, disposing of the defendant's claim as to the rule of valuation: "A generally accepted definition of market value is 'the price that would in all probability—probability being based on the evidence in the case—result from fair negotiations, where the seller is willing to sell and the buyer desires to buy.' However, property may be found to have a market value in the absence of evidence of other sales of like property in the open market. [*Portland Silk Co.* v. *Middletown,* 125 Conn. 172, 174, 4 A.2d 422.] The value of property is dependent upon many factors and is in the final analysis a matter of opinion. [*Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 233, 188 A. 433.] All of the evidence produced in a case of this kind is to aid the trier to arrive at his own conclusion which is to be reached by weighing the opinions of the experts in the light of all the cir-

cumstances in evidence bearing on value and his own general knowledge going to establish it. [*Appeal of Cohen,* 117 Conn. 75, 85, 166 A. 747; *Cohn* v. *Hartford,* 130 Conn. 699, 705, 37 A.2d 237.]"

There is no error.

In this opinion the other judges concurred.