STATE OF CONNECTICUT *v.* PETER BUNBLASKY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 3-6475

Argued September 25, 1967—decided April 5, 1968

*James C. Deakin,* of Danbury, for the appellant (defendant).

*John P. Sjovall,* assistant prosecuting attorney, for the appellee (state).

MACDONALD, J. In a trial to the court the defendant was convicted of breaking and entering without permission (General Statutes § 53-75) and has appealed, assigning as error (1) the failure of the court to correct certain findings, (2) the court's reaching a certain conclusion without supporting facts, and (3) its concluding upon all the evidence that the defendant was guilty of the crime charged beyond a reasonable doubt. Upon this last assignment of error we determine from the entire evidence whether the court erred in holding that guilt was established by the requisite degree of proof. It is therefore unnecessary to consider the claims of error directed to the finding. *State* v. *Pundy,* 147 Conn. 7, 8. Moreover, the defendant, in his brief and during oral argument, abandoned all claims of error save the one we consider from the entire evidence, and for this reason also we do not consider the others. *Stanley* v. *Hartford,* 140 Conn. 643, 645; *Bridgeport Hydraulic Co.* v. *Stratford,* 139 Conn. 388, 390; Maltbie, Conn. App. Proc. § 327.

The court could have reasonably found the following: At about 10 p.m. on November 9, 1966, Carol Elizabeth Burke, a housewife residing with her husband and two small children, ages four and three, at their residential home known as No. 1 Midrocks Road in Ridgefield, drove from her home to pick up her husband at Georgetown. Burke, who was employed in Stamford, was being driven from Stamford to Georgetown by his employer. The children were asleep. The Burke home is a small ranch-type house consisting of six and one-half rooms and is

located in a residential area consisting of single-family residential homes. Mr. and Mrs. Burke own their home. Midrocks Road intersects Limestone Road, which is a main thoroughfare in Ridgefield. Before she departed, Mrs. Burke telephoned her next door neighbor, a Mr. Ulvedal, and arranged with him to leave her telephone line open with his for the purpose of enabling him to hear any noise or crying on the part of her children. Ulvedal's house is located about fifty feet from the Burke house and is so set back from the street that the front portion of the house overlooks the rear portion of the Burke house. The telephone arrangement between Ulvedal and Mrs. Burke had previously been used. Mrs. Burke did not lock the doors, but she left several rooms illuminated, including the living room, hallway and kitchen. She also left the front porch light on. In leaving the area, Mrs. Burke noticed a car parked on her street in front of another neighbor's house, facing Limestone Road, about 150 feet away from her house. This automobile was a 1958 light blue Ford. Except for Ulvedal, Mrs. Burke had given no one permission to enter her house. Upon returning with her husband, she found nothing missing. At about 10:15 p.m., Ulvedal heard a noise on the telephone line coming from the Burke home "like something was being pushed against a table." He went outside on his front lawn, looked into the Burke kitchen from about twenty-five feet away and saw a person passing by the kitchen in the hallway. The hallway adjoins the kitchen. He went up on the porch and looked through the glass sliding door located on the porch. The curtains on the glass sliding door were parted about six inches. He saw a person with long hair looking straight at him—about five feet six or seven inches tall, with long "Beatle-type" hair and wearing whitish khaki pants, a sweat shirt and a jacket.

At that point Ulvedal tripped on something on the porch and the person observed went out the front door. Ulvedal went in the house, checked for the safety of the children and telephoned the police. He was at the Burke house when the police arrived.

At a later date Ulvedal was shown a picture of the defendant by the Ridgefield police and was "almost a hundred percent sure that this is the man but I would like to see him in person before I say that it is." Defendant's counsel was not present on this occasion. On November 16, at about 7 a.m., Ulvedal was called to the Ridgefield police station by Sergeant Hogan. Standing inside the police garage, at a short angle from a bookstore located on the opposite side of the street, Ulvedal observed and identified the defendant going to work. Defendant's counsel was not present on this occasion. The defendant was employed at this particular bookstore at this time. Still later, on the day of trial, Ulvedal identified the defendant outside the courtroom before trial began, and so testified on the stand. In concluding his direct examination during trial, Ulvedal, in response to the question, "Is there any question in your mind that he [the defendant] is the same person you saw on November 9 at the Burke home?" testified unequivocally, "No question in my mind." Neither Mrs. Burke nor Ulvedal knew the defendant prior to November 9, 1966.

The foregoing facts establish beyond a reasonable doubt a violation by the defendant of our breaking and entering statute (§ 53-75). *State* v. *Robinson,* 3 Conn. Cir. Ct. 273, cert. denied, 383 U.S. 960. Nothing is more fundamental than the proposition that the trial court is the final arbiter of the credibility of witnesses and that here, if the court determined that the testimony of the witnesses for the state was credible, as it did, their testimony was

sufficient to establish the commission of the crime. *State* v. *White,* 155 Conn. 122, 123; *State* v. *Hodge,* 153 Conn. 564, 573. We do not retry the facts or pass upon the credibility of witnesses. *Romaniello* v. *Dyna Distributors, Inc.,* 154 Conn. 605, 606. The defendant, however, through two witnesses, a girl friend and a school teacher, offered evidence to prove, and claimed to have proved, that he was physically present at the residence of his girl friend all during the evening of November 9 beginning at about 6 p.m. and indeed was helping his girl friend, Miss Gillis, to prepare for a biology examination which she was to take the next day. The defendant further offered evidence through Miss Gillis' teacher of biology at the Ridgefield High School, Rita Hatcher, that a biology examination was in fact given at the Ridgefield High School on November 10, 1966, and that Miss Gillis was present and took the examination. In fact, the defendant, according to the testimony of Miss Gillis, with the permission of her mother stayed overnight at the Gillis home on the night of November 9. Miss Gillis' mother knew of the defendant's presence at her home and approved of it but was not called to testify.

"Although an alibi is sometimes spoken of as a defense, it operates, in this state, to entitle an accused to an acquittal when he has so far proved the alibi that a reasonable doubt of his guilt is raised upon all the evidence." *State* v. *White,* 155 Conn. 122, 123. As we have said, the credibility to be accorded the testimony of the witnesses for the state was for the court to determine and, if credible, their testimony was sufficient to establish the commission of the crime. There was ample evidence before the court to prove, beyond a reasonable doubt, that a breaking and entering had been committed by the defendant.

The defendant urges us to adopt and here apply for the first time in Connecticut the rule and standards governing pretrial identification procedures— "identification parade," "showup," "presentation of the suspect alone to the witness"—prescribed by the United States Supreme Court on June 12, 1967, in *United States* v. *Wade,* 388 U.S. 218, and *Gilbert* v. *California,* 388 U.S. 263. This we cannot do. In the instant appeal, the defendant was tried and convicted on January 30 and 31, 1967, and was sentenced on February 17, 1967. Thereafter, appeal from his judgment of conviction was entered and pursued. The principles enunciated in *Wade* and *Gilbert,* supra, are specifically made inapplicable by the language of the United States Supreme Court in *Stovall* v. *Denno,* 388 U.S. 293. In *Stovall,* the court emphasized that the principles enunciated in *Wade* and *Gilbert* affected only those cases and that all future cases involving confrontations for identification purposes or identification parades were to be governed thereby. "We hold that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date. The rulings of *Wade* and *Gilbert* are therefore inapplicable in the present case. . . . It is, therefore, very clear that retroactive application of *Wade* and *Gilbert* 'would seriously disrupt the administration of our criminal laws' [citing *Johnson* v. *New Jersey,* 384 U.S. 719, 731]. . . . We also conclude that, for these purposes, no distinction is justified between convictions now final, as in the instant case, and convictions at various stages of trial and direct review. We regard the factors of reliance and burden on the administration of justice as entitled to such overriding significance as to make that distinction unsupportable. We recognize that Wade and Gilbert are, therefore, the only victims of pretrial confronta-

tions in the absence of their counsel to have the benefit of the rules established in their cases." *Stovall* v. *Denno,* supra, 296, 300.

We are satisfied from the record as a whole that the defendant received a fair trial and that he is guilty of the crime charged beyond a reasonable doubt.

There is no error.

In this opinion DEARINGTON and WISE, Js., concurred.