BROTHERS, INC. *v.* ANSONIA REDEVELOPMENT AGENCY

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued February 5—decided March 5, 1969

*Irwin E. Friedman,* with whom was *Arthur Levy, Jr.,* for the appellant (plaintiff).

*Joseph B. Buckley,* for the appellee (defendant).

ALCORN, J. The defendant in eminent domain proceedings took land and buildings belonging to the plaintiff in Ansonia for redevelopment and renewal purposes. See General Statutes § 8-128. As compensation for the taking the defendant determined and deposited with the clerk of the Superior Court the sum of $200,000. See General Statutes §§ 8-129, 8-130. The property consists of about 3.8 acres of land occupied by a complex of old industrial buildings and is bordered in part by the Naugatuck River and a railroad siding. The plaintiff applied to the Superior Court for a review of the amount fixed as compensation for the taking and the court referred the issue to a state referee for determination. After hearing the evidence offered by the parties and inspecting the property the referee filed his report, finding that the plaintiff had purchased the property in 1957 for about $150,000 and that the fair value at the time of the taking was $362,000, and he reassessed the damages at $362,000. In his memorandum of decision accompanying the report the referee described the buildings on the land as very old factory buildings used mainly for the storage of junk, and he stated that the property was well suited for that use. He stated further that, because of this, the plaintiff had claimed that the property "was for a special purpose" and that, in determining the value of special purpose property, the reproduction less depreciation approach should govern. The referee then stated that, if he was required, as a matter of law, to adopt such an approach, he would find the value of the property to be $445,000. He added, however, that he did not accept this claim of the plaintiff but had relied on

an income approach in valuing one parcel at $136,000 and a second parcel at $100,000. The value placed on the buildings thus appears to have been $126,000.

Pursuant to § 358 of the Practice Book, the plaintiff moved to correct the referee's report to recite a value of $204,000 and $100,000, respectively, on the two parcels of land and $489,017 on the buildings, and it requested that the total damages be reassessed at $793,017. It also requested the referee to find that when the property was purchased for $150,000 the owner had valued it at $450,000 to $500,000, had carried $405,000 in fire insurance on the buildings, and had sold the property at a distress price in order to be relieved of substantial maintenance and carrying charges. Finally, the motion sought a correction in the report to reflect the fact that the property was devoted to a "special use" and that the plaintiff made no claim that it was a "special purpose" property.

The referee denied the motion in all respects except to add to his finding the statement that in 1957 Ansonia was considered a distress area and prices were depressed. In the memorandum denying the motion to correct the referee stated that the requested changes in valuation were based on hearsay evidence and testimony which he was unable to accept and that "[m]y conclusion of $362,000 was made because I did not accept the low figure of the purchase price, but was reached as the fair market value of the subject property at the time of condemnation, having in mind the use to which it was put."

The plaintiff filed exceptions to the referee's report, alleging error in the denial of the changes sought in the motion to correct. Practice Book § 359. Following a hearing, the court overruled the exceptions and accepted the report of the referee as cor-

rected. The court found the amount due the plaintiff as compensation for the taking to be $362,000 as determined by the referee and adjudged that the defendant pay the plaintiff the sum of $162,000, that being the difference between the compensation as finally determined and the $200,000 originally deposited with the clerk, with interest and costs.

The plaintiff has appealed from the judgment, and the single assignment of error is that the court erred in failing to sustain the plaintiff's exceptions to the referee's report. The first of those exceptions asserted that the referee erred in refusing to reassess the damages at $793,017 and in refusing to correct his conclusion to reflect that the property was devoted to a "special use" since the plaintiff made no claim that it was a "special purpose" property. The second exception asserted that the referee erred in refusing to add to his finding the claimed facts relating to the value of and the claimed reasons for the sale of the property for $150,000 in 1957.

The second exception is without merit. The referee had found that the plaintiff purchased the property in 1957 for $150,000. The plaintiff would have him add to that finding the fact that when this purchase was made the previous owner had valued the property at $450,000 to $500,000, that the fire insurance on the buildings alone was $405,000, and that the property had been sold at a distressed price to avoid maintenance and carrying expenses. The referee denied this correction because he found the evidence as to these claimed facts to be based on testimony and hearsay evidence which he did not accept as worthy of credit, and he further stated that he did not accept the low figure of the purchase price in reaching his conclusion as to the fair market

value of the property at the time of condemnation. It was within the province of the referee to determine the credence to be given to the testimony before him. *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425, 151 A.2d 693.

The plaintiff's principal argument concerns the first exception to the report and in particular the meaning and significance of the terms "special purpose" and "special use" in arriving at a correct valuation of the condemned property. The argument, in brief, is that the plaintiff was conducting a large and profitable junk business on the property in a desirable location near manufacturing concerns which were likely customers; that the business was of a type unacceptable in most areas; that there was no other site available for it in the immediate vicinity; and that the use being made of the property under these circumstances served to place it in the category of a special use.

We accord little weight to the plaintiff's quarrel with the referee as to whether the property should be called a "special use" or a "special purpose" property. Such an excursion into semantics leads nowhere. The problem which has sometimes arisen in eminent domain proceedings of valuing property which is specially designed or limited in usefulness so that it does not have a readily ascertainable market value in the usual sense has led courts and textwriters to the use of descriptions such as "special use", "special purpose", "specialty", and the like. See Jahr, Eminent Domain §§ 83, 85; 4 Nichols, Eminent Domain (3d Ed.) §§ 12.22[2], 12.32; 1 Orgel, Eminent Domain (2d Ed.) §§ 38, 39; 27 Am. Jur. 2d, Eminent Domain, §§ 268, 281; 29A C.J.S., Eminent Domain, §§ 136 (3), 160 (a). It is quite clear, however, that the variations in terminology

found in such instances serve only as a means of expressing an effort to include, as a significant element of value, the private or special use or purpose which the property had for the owner. We find no precise legal distinction between the terms "special use" and "special purpose" and conclude that the plaintiff's attack on the referee's report based on any such distinction merits no extended discussion.

The plaintiff's principal effort is to attack the soundness of the referee's method of reassessing the damages. The plaintiff argues that the property's special use or purpose "may be considered as an element of value." The referee has stated that he determined the value of the property "having in mind the use to which it [the property] was put." The plaintiff argues "that the Referee had no alternative except to find that as a matter of law, the property was unique and suitable for special use and as such, his valuation of $445,000.00 [based on a reproduction less depreciation approach] should automatically have been applied." In contrast to this claim the plaintiff's exception to the report, which is the basis of the assignment of error, sought a valuation of $793,017. The referee has stated, however, that he concluded that "the fair market value of the subject property at the time of condemnation, having in mind the use to which it was put" was $362,000.

The issue thus appears to be whether the referee could properly conclude that the fair market value of the property, having in mind the use which was being made of it, was $362,000 or whether, because of some uniqueness in that use, he was required as a matter of law to fix the larger value of $445,000, using a reproduction less depreciation basis.

The referee had before him the opinions of four

appraisers, two for each of the parties. One of the defendant's appraisers reported that the property was partially leased and that he considered its highest and best use to be for multiple occupancy particularly for manufacturing purposes. The other appraiser for the defendant considered rental for industrial purposes the highest and best use for the property. One of the plaintiff's appraisers considered the property unique in that there had been no sales of comparable property, but nevertheless he felt that the highest and best use of the vacant portion was for retail or showroom purposes. The plaintiff's other appraiser made only what is described as a "reproduction appraisal." The valuations ranged from a low of $224,000 to a high of $1,302,900.

The plaintiff was entitled to receive just compensation for the property taken, and the referee's problem was to award a sum which in his considered judgment would accomplish that result, after taking into account the opinions of the appraisers, the claims of the parties and all of the circumstances bearing on value including his own view of the property. *Moss* v. *New Haven Redevelopment Agency,* supra; see *Canterbury Realty Co.* v. *Ives,* 153 Conn. 377, 384, 216 A.2d 426. The usual measure of damages is, in general, the fair market value of the property, in the determination of which it is proper to consider the use which is being made of the property if, in truth, that use of the property enhances the value of it. *Housing Authority* v. *Lustig,* 139 Conn. 73, 76, 90 A.2d 169. This is but another way of saying that, in determining the market value of the land taken, it is proper to consider "all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of

the land." *Andrews* v. *Cox,* 127 Conn. 455, 458, 17 A.2d 507. We have consistently applied the rule that the existence of a going business on the land is an element to be taken into account as indicating the highest economic use to which it may be put. *Seferi* v. *Ives,* 155 Conn. 580, 584, 236 A.2d 83, appeal dismissed, 391 U.S. 359, 88 S. Ct. 1665, 20 L. Ed. 2d 640.

If, as the plaintiff claims, its junk business was safely ensconced in a desirable location and no other like location was available in the vicinity to which it might move, those factors were surely ones which both the owner and a prospective purchaser desirous of conducting a similar business on the property would consider in negotiating a sale price. Moreover, the referee was confronted with the question whether the highest and best use of this property actually was for the junk business then being conducted on it, as claimed by the plaintiff, or whether it lent itself as well or better for rental purposes as claimed by the defendant. Obviously the buildings on the property had been constructed and used, in the first instance, for manufacturing purposes. That use had now ceased and the property was currently devoted, in part at least, to the storage of junk. If the taking of the property by eminent domain meant, as the plaintiff seems to claim, the loss of the junk business or serious injury to it, damages for that loss or injury could not be included in the damages awarded for the taking of the realty. General Statutes § 8-128; *Housing Authority* v. *Lustig,* supra, 75. But the fact that the junk business was being conducted there could be considered in valuing the property if, in truth, it affected that value. *Seferi* v. *Ives,* supra, 583.

The referee did not specifically find what was the highest and best use of the property, nor did the

plaintiff request such a finding. The referee had before him evidence from appraisers for both parties from which he could conclude that the property was equally, if not more, adaptable for rental purposes as for the storage of junk. On all the evidence and his own view of the property he concluded that the fair market value, considering the use being made of the property, was $362,000. No single method of valuation was controlling, and the referee was entitled to select the most appropriate one under the facts as he found them to be. *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 99, 230 A.2d 9; *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* 152 Conn. 137, 142, 204 A.2d 833. The court was correct in overruling the plaintiff's exceptions to the report of the referee and in rendering the judgment appealed from.

There is no error.

In this opinion the other judges concurred.