EDMUND W. O'BRIEN, TRUSTEE *v.* BOARD OF TAX REVIEW OF THE TOWN OF GROTON

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued March 6—decision released July 15, 1975

*James T. Haviland II,* town attorney, for the appellant (defendant).

*Donald O'Brien,* for the appellee (plaintiff).

LOISELLE, J. The plaintiff trustee, Edmund W. O'Brien, appealed from the refusal of the board of tax review of the town of Groton to reduce the valuation on buildings located on the trust's real estate in Groton. By way of a special defense to the appeal the defendant admitted that the building assessment was high but that "the land assessment was proportionately low," and requested that the court consider the overall assessment and deny relief to the plaintiff. The matter was referred to a referee who, acting as the court pursuant to its powers under General Statutes § 12-118, reduced the valuation of the buildings but increased the valuation of the land so that the overall assessment of the plaintiff's property was reduced. The defendant has appealed.

General Statutes § 12-118, under which this appeal is taken from the decision of a board of tax review, states that "[t]he court shall have power to grant such relief as to justice and equity appertains." Mere overvaluation is sufficient to justify redress under § 12-118, and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in sub-

stantial overvaluation. *Hutensky* v. *Avon,* 163 Conn. 433, 436, 311 A.2d 92; *E. Ingraham Co.* v. *Bristol,* 146 Conn. 403, 409, 151 A.2d 700, cert. denied, 361 U.S. 929, 80 S. Ct. 367, 4 L. Ed. 2d 352. The court must first determine whether the plaintiff has been aggrieved by the action of the board of tax review and, if so found, it then proceeds to exercise a broad discretionary power to grant relief. *National Folding Box Co.* v. *New Haven,* 146 Conn. 578, 585, 153 A.2d 420; *Sibley* v. *Middlefield,* 143 Conn. 100, 105, 120 A.2d 77. If a taxpayer is found to be aggrieved by the decision of the board of tax review, the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property. *Dickau* v. *Glastonbury,* 156 Conn. 437, 441–44, 242 A.2d 777; *Sibley* v. *Middlefield,* supra, 106.

This appeal relates to the assessment of taxes based on valuation on the first day of September for the years 1967, 1968, 1969 and 1970 on the plaintiff's tract of land containing about 43.52 acres in the town of Groton. The court's finding is as follows: The rear half section of the property is undeveloped rough land, and on the front half were remnants of temporary housing units built in 1941. By 1967, the structures were physically and functionally depreciated to a very great extent; 146 units of housing were vacant and only 54 occupied, and in 1968, 153 units were vacant. Parts of the structures were damaged by fire and many windows were broken. The housing units were ramshackle and dilapidated, and the majority were uninhabitable. The gross rentals for 1967 were $46,255.57, and the net income was $26,480.57. For each year in question, the plaintiff's assessment upon which taxes were laid was based upon a valuation as

follows: Land – $61,010, buildings – $239,600, making a total of $300,610. On October 29, 1970, the plaintiff's land was sold to developers for a price reported to be about $600,000, and, after purchase and prior to the hearing in this case, all the old buildings on the land were demolished and 220 units of apartment housing were erected. The last periodic revaluation in Groton was effective as of September 1, 1959. Assessments of property in the town of Groton are determined by the appropriate board's first establishing the present true and actual value of the property and then as value for taxation computing a uniform percentage thereof; this percentage in the town of Groton is and has been 70 percent.

The court considered that the land value as fixed by the assessor was too low and the building value for the years in question was much too high. None of these findings has been attacked by the defendant. The court concluded[1] that the plaintiff was aggrieved and that the fair, just and equitable value of the plaintiff's land and buildings for the years 1967, 1968, 1969 and 1970 was $100,000 for the buildings and $129,000 for the land, to which would be applied the uniform 70 percent valuation used in the town of Groton.

The defendant has attacked the court's conclusions as to the assessment value of the land on grounds that those conclusions are unsupported by the evidence and that they are inconsistent with the principles of equity and justice under General Stat-

---

[1] These conclusions were included within and comprise six paragraphs of the finding of facts. Since they are actually conclusions reached by the court they will be considered as such in the opinion.

utes § 12-118, in view of the fact that the premises were sold for over $600,000 only fifty-nine days after the September 1, 1970 assessment. The conclusions reached by the trier must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law. *Esposito* v. *Commissioner of Transportation,* 167 Conn. 439, 440, 356 A.2d 175; *Textron, Inc.* v. *Wood,* 167 Conn. 334, 345, 355 A.2d 307. To this point, the defendant has assigned error in the court's refusing to include in its finding nine paragraphs of the draft finding. To secure these additions of facts the defendant has accordingly referred in its brief to parts of the appendix.[2] See *Walsh* v. *Turlick,* 164 Conn. 75, 76, 316 A.2d 759; Maltbie, Conn. App. Proc. § 158. The appendices to the briefs of both parties, however, are such that resort to the transcript of the proceedings is needed to reconcile and explain the apparent discrepancies and conflicts in the disparate portions of the narrative of the testimony referred to. Practice Book § 721; *Independent Methodist Episcopal Church* v. *Davis,* 137 Conn. 1, 11–12, 74 A.2d 203; see *Baton* v. *Potvin,* 141 Conn. 198, 104 A.2d 768. This is especially necessary where the only two witnesses are the appraiser for the plaintiff and the assessor for the defendant town, and where, in an appeal taken under § 12-118 of the General Statutes, the court is not only governed by principles of equity and justice, but is also required to act within the mandate of the assessment statute that "property . . . shall be liable to taxation at a uniform per-

---

[2] Two paragraphs have been included which are supported by the defendant's appendix as explained by the transcript. Two paragraphs are already included in the finding, one paragraph is not admitted or undisputed and the remaining three paragraphs are immaterial to the issues to be discussed.

centage of its present true and actual valuation."
General Statutes § 12-64; see *E. Ingraham Co.* v.
*Bristol,* 144 Conn. 374, 377, 132 A.2d 563.

The plaintiff's appraiser used the income
approach in determining his valuation for the land
and buildings of $178,000 and, at a later appearance,
arrived at the same valuation for the land alone
based on his estimate of the number of units which
could be built on the land. The assessor, the first
time he appeared, relied solely on the October, 1970
sale of the premises for a price reported to be about
$600,000, as established by the documentary stamps
on the deed, although he admitted that after he
heard of the sale he did not increase the land valu-
ation which had been on the premises for the years
in question. He also stated that he should have
assessed the land on his opinion of the number of
apartments which could have been placed on the
land at the rate of $1000 a unit. His opinion as to
the number of units is unknown. On a subsequent
trial day the plaintiff requested the assessor to
bring in assessment cards relating to land in the
area of the property in question. This was not done.
From memory the assessor testified that in 1967
a golf course containing 124.8 acres located across
the street from the property was sold to the town
for $960,000 when its assessment was $300,000. He
further testified that when land is sold, the assess-
ment on the land is not changed, no matter what
the price paid, unless and until there is a change
of use or a change of zone. He then gave illustra-
tions of the change of assessment in apartment
complexes after they were built: A parcel of land
was assessed at $24,000. At some time after its
sale but only after eighty-seven buildings were con-
structed was the land assessed at $243,600. In

another complex the land was assessed at $3200. Only after twelve apartments were built was the land value reassessed at $8400. In still another area in the immediate vicinity the land value was $6300. This land was sold to a developer and only after forty apartments were built was the land reassessed to $28,000. It may be noted that these figures are inconsistent with the assessor's opinion that the land value should be set at the rate of $1000 per unit.

After an examination of the evidence presented by the plaintiff's appraiser and of the assessor's opinion in the appendices as clarified and more fully explained in the transcript, it is clear that the referee, who had particular personal knowledge of the whole area and of the land transactions in that area covering a considerable period of time, took into consideration the disproportionate assessment of other properties and in fact found that "assessments of property in the town of Groton are determined by the board first establishing the present true and actual value of the property." It is true that a plaintiff may not have relief in a proceeding such as this on the ground that the property of other taxpayers is assessed at too low a rate. *White* v. *Portland,* 63 Conn. 18, 22, 26 A. 342. Evidence of disproportionate assessments of other properties, however, may be considered in an action such as this in relation to the true and actual value of the plaintiff's property. *Thaw* v. *Fairfield,* 132 Conn. 173, 180, 43 A.2d 65.

At first blush, it might be argued that the great disparity between the sale price so recent to the assessment date and the assessment found by the

court would nevertheless demand a reconsideration by the court. The sale price of the land in question is competent evidence to show its fair market value; *Schnier* v. *Ives,* 162 Conn. 171, 177, 293 A.2d 1; but it is not controlling in determining its fair market value. *Schnier* v. *Ives,* supra; *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* 158 Conn. 37, 39, 255 A.2d 836. In *Thaw* v. *Fairfield,* supra, 175, the premises were purchased for $65,000 and that very month were assessed for $125,270. There the court found that, irrespective of the sale price, the true market value was as assessed. In the present case, none of the circumstances relating to the sale in October, 1970, financial, conditional or otherwise, was received into evidence, and the town relied solely on the amount paid to the town clerk for the real estate conveyance tax stamps that were affixed to the deed to determine the purchase price.

It is evident from the finding that the referee viewed the premises prior to trial, that he found that the assessments of property in the town were established at their present true and actual value, that he did not exclude evidence of the sale of the land fifty-nine days after the assessment date, and that he took these factors into consideration as elements of his judgment of what the assessment, in fact, should be. The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property. *Esposito* v. *Commissioner of Transportation,* 167 Conn. 439, 441, 356 A.2d 175; *Schnier* v. *Ives,* supra, 177–78. The court's conclu-

sions as to the value of the plaintiff's property are adequately supported and do not depend on an erroneous rule of law.

There is no error.

In this opinion HOUSE, C. J., MacDONALD and LONGO, Js., concurred.

BOGDANSKI, J. (dissenting). On this appeal from the board of tax review, the trial referee had "power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable." General Statutes § 12-118. In my view, "justice and equity" have not been done in this case where the trial referee's valuation of the plaintiff's land and buildings on September 1, 1970, was only 36 percent of the sale price received by the plaintiff for that same realty on October 29, 1970.

The posture of the pleadings is important. The plaintiff's appeal asserted that the town's valuation of the subject buildings was too high, but it did not attack the validity of the valuation placed on the land. The town agreed in its answer that the valuation of the buildings was too high but asked the trial referee to do "justice and equity" under § 12-118 by increasing the valuation of the land so that the total valuation of the real estate remained the same. Thus, the ultimate issue before the trial referee was whether the defendant's overall valuation of the plaintiff's land and buildings at $300,610 was greater than their "present true and actual valuation" for the years 1967 through 1970. See General Statutes § 12-64.

"The expressions 'actual valuation,' 'actual value,' 'market value,' 'market price' and . . . 'fair value'

are synonymous." *Sibley* v. *Middlefield*, 143 Conn. 100, 106, 120 A.2d 77. The "present true and actual value" of property is not its value at a forced auction or sale but is "to be the fair market value thereof." General Statutes § 12-63. "A generally accepted definition of market value is 'the price that would in all probability—the probability being based upon the evidence in the case—result from fair negotiations, where the seller is willing to sell and the buyer desires to buy.' . . . [citations omitted]" *Portland Silk Co.* v. *Middletown*, 125 Conn. 172, 174, 4 A.2d 422; *Bridgeport Hydraulic Co.* v. *Stratford*, 139 Conn. 388, 397, 94 A.2d 1. The process of valuation is at best one of approximation; *National Folding Box Co.* v. *New Haven*, 146 Conn. 578, 586, 153 A.2d 420; and, as pointed out in the majority opinion, the sale price of land is not the exclusive method of determining actual or fair value. Yet, it has been repeatedly stated that the best test for determining value is ordinarily that of market sales. See, e.g., *Hutensky* v. *Avon*, 163 Conn. 433, 437, 311 A.2d 92; *Federated Department Stores, Inc.* v. *Board of Tax Review*, 162 Conn. 77, 87, 291 A.2d 715; *Burritt Mutual Savings Bank* v. *New Britain*, 146 Conn. 669, 674, 154 A.2d 608; *National Folding Box Co.* v. *New Haven*, supra, 584; *Sibley* v. *Middlefield*, supra.

The evidence presented by the town's assessor was that the plaintiff's land and buildings were sold on October 29, 1970, for $630,000. That sale price was calculated from the real estate conveyance tax which was paid upon recordation of the deed. See General Statutes § 12-494. The majority opinion states that the "circumstances" relating to that sale were not received into evidence, implying that the sale price was not necessarily a valid measure of

what a willing buyer would pay a willing seller for the land and buildings. That sale price, however, was based on the conveyance tax paid, which, by statute, is not to be "greater than the amount necessary to reflect the *actual value* of the property or interest conveyed." (Emphasis added.) General Statutes § 12-501. There should, therefore, be a presumption that the sale price calculated on the basis of the conveyance tax is equal to or less than the actual or fair value of the real estate. The plaintiff, as seller, is in possession of all the facts and circumstances surrounding the sale and it is he who should be required to rebut the presumption created by § 12-501 of the General Statutes. The lack of evidence regarding the "circumstances" surrounding the sale should not be used to justify the enormous discrepancy between the $630,000 sale price of the property and the trial referee's conclusion that the fair value of that same property was only $229,000.

It is true that the isolated sale price of property, indeed a sale of the same property, may not be a valid measure of its fair value. And, it has been held that the actual or fair value of property may be far greater than a recent sale price of that property. See *Thaw* v. *Fairfield,* 132 Conn. 173, 180, 43 A.2d 65. That is not inconsistent, however, with the mandate of § 12-501 of the General Statutes that the sale price reflected by the conveyance tax must not be greater than the actual value of the property or interest conveyed.

In any event, the defendant was not claiming that the valuation of the plaintiff's land and buildings should be increased to reflect the $630,000 sale price. Rather, the pleadings requested only that the trial

referee determine that the city's overall valuation of land and buildings at $300,610 for the years 1967 through 1970 was not excessive. Under the facts of this case, that is what should have been done.

I would find error, set aside the judgment and remand the case with direction to increase the valuation of the land for the years 1967 through 1970 so that the total valuation of the plaintiff's land and buildings for each of those years is equal to the defendant's overall valuation of $300,610.