UNIROYAL, INC., ET AL. *v.* BOARD OF TAX REVIEW OF THE TOWN OF MIDDLEBURY

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued October 12, 1977—decision released March 14, 1978

*John W. Barnett,* with whom was *Norman Fineberg,* for the appellants (plaintiffs).

*Joseph Adinolfi, Jr.,* with whom were *Brian A. Barnes* and, on the brief, *Donald W. O'Brien,* for the appellee (defendant).

LOISELLE, J. The plaintiffs appealed to the Court of Common Pleas, pursuant to General Statutes § 12-118, from a refusal by the board of tax review

of the town of Middlebury to reduce the assessor's valuation of land and buildings located within the town. The matter was referred to a state referee, who, exercising the powers of the Court of Common Pleas, determined that the plaintiffs were not aggrieved by the board of tax review's decision not to reduce the October 1, 1973 and October 1, 1974 assessments. The plaintiffs have appealed from that judgment.

In 1969, the plaintiff Uniroyal, Inc., hereinafter Uniroyal, entered into an agreement with the plaintiff Metropolitan Life Insurance Company, hereinafter Metropolitan, whereby Uniroyal conveyed to Metropolitan land in the town of Middlebury on which Metropolitan was to finance the construction of a corporate headquarters and research facility for Uniroyal.[1] Under the terms of the agreement, Uniroyal, while construction was in progress, was to pay Metropolitan an annual rent in a sum equal to 9 percent of the amount advanced for the construction of the headquarters. Whenever Metropolitan made an advance of funds, the parties, pursuant to the lease, entered into a separate amendment to the lease to establish interim rent. Upon completion of the project and in accordance with the original agreement, Uniroyal began to pay an annual rent equal to 9.2 percent of the total cost

---

[1] The plaintiffs urge that the court erred in failing to find facts set forth in the draft finding, all of which are claimed to have been undisputed. Those facts which the plaintiffs seek to have included in the finding pertain to the nature of the agreement between Uniroyal and Metropolitan. The facts as found sufficiently convey the nature of that transaction and, even were additional facts included in the finding, the result reached by this court would not be altered. Findings will not be corrected by adding facts which will not affect the result. *State* v. *Watson*, 165 Conn. 577, 589 n.1, 345 A.2d 532; *Cleveland* v. *Cleveland*, 165 Conn. 95, 96, 328 A.2d 691; Maltbie, Conn. App. Proc. § 157.

of the project. A final amendment to the lease recites that the total cost to Metropolitan was $42,500,000, on which the final rent established was $3,910,000 per year. The twenty-eight-year lease commenced on December 1, 1972, and gave Uniroyal the privilege of renewing the lease for two successive ten-year terms at a reduced rental.

Prior to establishing the assessed valuation of the Uniroyal complex on the grand list of October 1, 1973, the Middlebury board of assessors sought the advice of Robert J. Flanagan, a real estate appraiser. Employing the income approach, Mr. Flanagan found the full valuation of the Uniroyal complex to be $24,809,000 as of October 1, 1971. The board of assessors rejected this report, determining the value to be $39,100,000 as of October 1, 1973. Representatives of Uniroyal and the board of assessors met and thereafter, on January 30, 1974, the assessors reduced their valuation for the grand list of October 1, 1973, to $32,959,760. When the board of tax review refused to reduce the valuation further as requested by Uniroyal, an appeal was taken to the Court of Common Pleas. Subsequently the plaintiffs amended their appeal to include the assessed valuation on the grand list of October 1, 1974. The $32,959,760 assessment made for both years was predicated on a valuation of the land at $517,100 and the buildings at $32,442,660.

The matter was referred to a state referee and a full hearing was held. Each side in the dispute offered the expert testimony of an appraiser whose qualifications were conceded by the opposing party. Because of the lack of sales data on similar properties, neither appraiser developed the market data approach in determining the fair market value of the complex.

The plaintiffs' appraiser utilized an income approach in determining the property's value. His approach was developed on the basis of his analysis and adjustment of rent received for office space in New Haven and Bridgeport, and office-industrial-research space in New Haven, West Haven, Norwalk, Stamford, Stratford and Hamden. His comparative analysis led to a determination that the earning or income-producing capacity, sometimes referred to as economic rent, of the Uniroyal complex property was $2,118,508 per year. Using an overall capitalization rate of 9.35 percent as of October 1, 1973, and a rate of 9.7 percent as of October 1, 1974, he determined that the value of the appraised property as of October 1, 1973, and October 1, 1974, was $22,658,000. Of this amount, $517,000 was allocated for land, while the remainder represented the value of the buildings and other real improvements.

The defendant's appraiser developed both the income capitalization and the cost approach in determining the property's value. The cost approach involved a study of the individual costs of each building on the site, with a subvaluation for the land derived from a market data approach. The income approach involved not a comparative analysis of comparable rents, but a detailed analysis of the relationship between the income received and the cost of comparable real estate investments by insurance companies on an international and national market. The defendant's appraiser took this approach since the complex property was of such magnitude that it would be the subject of an investment purchase by large investors similar to Metropolitan. His analysis also included a study of the marketability of the subject property, com-

paring property in a range of sizes and types. On the basis of his total analysis, he determined that the value of the complex could be determined by capitalizing the annual rent, using for 1973 a capitalization rate of 10 percent and for 1974 a rate of 9.3 percent. Applying these rates to the annual rent of $3,910,000, minus the $86,375.68 of rent allocable to items of personal property, the market value was determined to be $38,236,243.20 as of October 1, 1973, and $41,114,236 as of October 1, 1974.

After hearing all the evidence and viewing the premises, the court, explicitly rejecting as invalid the method adopted by the plaintiffs' appraiser, concluded that the method utilized by the defendant's expert was proper. The plaintiffs, on appeal to this court, claim that the court's conclusion that the contract rent was equivalent to economic rent is without basis in the record. It is the plaintiffs' contention that the contract rent contained in the lease between Uniroyal and Metropolitan reflects payment for use of the money advanced by Metropolitan rather than payment for use of the property and that, consequently, it bears no relationship to the value of the property and cannot be capitalized to reach a determination of the property's market value.

General Statutes § 12-64 provides that all nonexempt real estate "shall be liable to taxation at a uniform percentage of its present true and actual valuation . . . to be determined by the assessors." The terms "true and actual value" are defined in § 12-63 to mean "the fair market value thereof and not its value at a forced or auction sale." Fair market value is generally best ascertained by reference

to market sales. *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 236, 348 A.2d 641; *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 87, 291 A.2d 715; *Sibley* v. *Middlefield,* 143 Conn. 100, 107, 120 A.2d 77. Where this method is unavailable, however, other means are to be found by which to determine value. *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 337, 122 A. 91. A variety of such alternative methods for calculation of "true and actual value" have been approved by this court: use of the cost of reproduction with an adjustment for depreciation; *Connecticut Light & Power Co.* v. *Monroe,* 149 Conn. 450, 452, 181 A.2d 118; use of the original property cost less depreciation; *Bridgeport Gas Co.* v. *Stratford,* 153 Conn. 333, 335, 216 A.2d 439; *Bridgeport Hydraulic Co.* v. *Stratford,* 139 Conn. 388, 393, 94 A.2d 1; and the capitalization of actual income approach; *Somers* v. *Meriden,* 119 Conn. 5, 7–8, 174 A. 184. "As a rule, however, '[n]o one method is controlling; consideration should be given to them all, if they have been utilized, in arriving at the value of the property.' *Sibley* v. *Middlefield,* supra, 107." *New Haven Water Co.* v. *Board of Tax Review,* supra, 237.

In the present case, the parties agree that the paucity of sales of property similar to the Uniroyal complex renders the market data approach inadequate. Rather, both parties rely on a valuation derived from the use of an income-capitalization method, but the approaches taken by each of the two expert appraisers differ significantly. The plaintiffs' expert sought to determine the property's economic rent, or, as the court defined it, "the earning or income-producing capacity of the property as distinguished from actual earnings," on the basis

of an analysis of rents received for the use of other Connecticut properties, with adjustments made for variations in size, location, and so on. The court explicitly rejected that particular approach of the plaintiffs' expert. The court found that the comparisons made, even with the adjustments, were invalid in that the comparative property was not adequately similar to the property in question. The court further found that his adjustments involved consideration of functional obsolescence in the Uniroyal complex, while the court found no such obsolescence. Finally, the court found that his comparisons unduly restricted the functional area of the complex, ignoring certain areas in use by Uniroyal. "The referee was at liberty to accept and give effect to the testimony of such of the witnesses as he believed to be helpful to him, and to so much of the recognized methods employed by the expert witnesses as a basis for their testimony as he considered most applicable to the situation before him"; *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425, 151 A.2d 693; and the plaintiffs do not challenge this facet of the court's decision.

The plaintiffs argue, however, that the court's decision rests solely on its acceptance of the defendant's income-capitalization approach which utilizes the contract rent as the equivalent of economic rent, or the earnings or income-producing capacity of the property. The plaintiffs strongly urge that no evidence substantiated the court's finding that the two are equivalent. Rather, it is the plaintiffs' contention that the evidence illustrated that the agreed-upon rent constituted a financing agreement and was derived from the amount of money forwarded by Metropolitan to cover the cost of constructing the complex. According to the plaintiffs, such

"rent" was neither negotiated nor intended as payment for use of the property. The plaintiffs reason that the court's conclusion is, therefore, unsupported by the facts and, indeed, stands in contradiction to the economic realities of the Uniroyal-Metropolitan transaction.

The plaintiffs' argument is based upon several assumptions: (1) that the nature of the Uniroyal-Metropolitan transaction, defined by the plaintiffs to be a "financing transaction through the medium of a sale and leaseback," is determinative of the question of whether the actual rent paid may be capitalized to determine the property's value; (2) that the court's decision rested solely upon acceptance of the income-capitalization approach based upon capitalization of the contract rent; and (3) that the court had no basis for its finding and conclusion that the contract rent was equivalent to economic rent in this case. Each of these assumptions requires review.

In *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 291 A.2d 715, this court was confronted with property subject to a similar sale and leaseback transaction. In that case, the plaintiff sold the property to a third party, from whom it was then leased. The trial court determined that the leaseback arrangement indicated a security agreement and, consequently, did not reflect actual rental income. The plaintiff in that case, who argued that the agreement constituted a real lease, attempted to submit evidence as to the genuineness of the lease, but the court excluded it as irrelevant. In deciding that the court erred in excluding such evidence, this court stated: "Whether the instrument in question is a lease or

a different sort of agreement is not determinative [of the question of whether the amount specified in the lease could be properly capitalized to determine the property's value]. The basic question is whether the property was producing its maximum income." Id., 83. The principle expressed derived from *Somers* v. *Meriden*, 119 Conn. 5, 8, 174 A. 184, in which this court expressed its view that "[a]s a general principle, earning or income-producing capacity, as distinguished from actual earnings, is to be regarded as a factor in valuation for taxation purposes, but if the property is devoted to the use for which it is best adapted and is in a condition to produce or is producing its maximum income, the actual rental is a very important element in ascertaining its value." See also 4 Cooley, Taxation (4th Ed.) § 1146.

In the course of the hearing before the referee, both experts agreed that the complex property is now being put to its highest and best use, the use to which it is most adapted. Under these circumstances, the court's reliance on the actual rent as an important factor in determining the property's value was not misplaced, irrespective of any determination as to whether the "rent" specified in the lease constituted "economic" rent.

It is undisputed that the $3,910,000 annual rent paid by Uniroyal to Metropolitan constituted net income to Metropolitan.[2] As this court has stated, "[p]resent income and that reasonably to be anticipated exerts a large influence upon the amount which a prudent man would give for property as

---

[2] The unchallenged finding states that the rent allocable to realty "is absolute net income since Uniroyal is required to pay all expenses of the property including the real estate taxes."

a permanent investment." *Somers* v. *Meriden, supra,* 8. Since "fair market value" is generally said to be "the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal"; *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 236, 348 A.2d 641; *Portland Silk Co.* v. *Middletown,* 125 Conn. 172, 174, 4 A.2d 422; it cannot be said, either in law or logic, that the actual income accruing to Metropolitan under the particular facts of this case is not a significant factor to be considered in determining what a third party would pay to acquire the property in question. Indeed, in determining value, the trier is under a legal compulsion to consider everything that might legitimately affect value. *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 688, 67 A.2d 851.

The plaintiffs have hinged virtually their entire claim on the argument that the court's finding and conclusion that the contract rent was equivalent to economic rent were without basis. Even were this so, the record, in the absence of this particular finding and conclusion, would amply support the court's final decision. The capitalization of actual income approach, the cost approach, and the court's own view of the site combine as proper considerations in pursuit of a determination of value. *O'Brien* v. *Board of Tax Review,* 169 Conn. 129, 136, 362 A.2d 914; *Esposito* v. *Commissioner of Transportation,* 167 Conn. 439, 441, 356 A.2d 175; *Bridgeport Hydraulic Co.* v. *Stratford,* 139 Conn. 388, 397, 94 A.2d 1. The court's equation of contract rent with economic rent adds an additional factor, but is not necessary. In any event, the record reveals that the defendant's expert twice asserted his conclusion that on the particular facts before

him it was his belief that the two were equated. The plaintiffs claim that the opinion was unreasonable since it lacked a factual basis. The plaintiffs had sufficient opportunity, however, to inquire into this on cross-examination. See *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 236, 188 A. 433. The referee was within his authority in determining the weight to be given the expert's opinion. *Connecticut Coke Co.* v. *New Haven,* 169 Conn. 663, 668, 364 A.2d 178; *Vangor* v. *Palmieri,* 143 Conn. 319, 321, 122 A.2d 312. Finally, the finding explicitly makes the exhibits, including the experts' reports, a part of the record. The incorporated report of the defendant's expert explicitly relates the income approach to the facts of this case and provides adequate substantiation for the expert's opinion that the actual rent correlated with economic rent in this case.

It is obvious from the findings and conclusions that the court accepted the opinion of the defendant's expert. The court was at liberty to give such testimony full effect. *Moss* v. *New Haven Redevelopment Agency,* 146 Conn. 421, 425, 151 A.2d 693. The conclusions reached are supported by the facts as found.

There is no error.

In this opinion the other judges concurred.