[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In plaintiff's motion for a deficiency judgment in CT Page 5253 this foreclosure action, the fundamental issue is the value of the property foreclosed upon as of the date title vested in plaintiff.
The judgment of strict foreclosure was entered in this case on February 10, 1992 and the court set March 3, 1992 as the law day for defendant Brycorp Associates, owner of the equity, and March 4, 1992 for the defendant guarantors.
At the time of judgment, court accepted an affidavit of debt filed by defendant Brycorp Associates indicating the amount of principal and interest due on plaintiff's debt to be $1,035,786.70. Defendant Brycorp Associates also submitted an appraisal of the property at $1,181,000. Plaintiff reserved the right to challenge both the amount of the debt and the fair market value of the property. The court at that time also reserved judgment on plaintiff's counsel, appraiser, and title fees.
At this hearing for a deficiency judgment the parties have stipulated plaintiff's debt, including accrued interest and unpaid taxes due the town of Burlington, to be $1,149,074.57.
The subject property consisted of twelve lots left over from a subdivision of originally 64 lots. The plaintiff's appraiser, R. Bruce Hunter, testified the 12 lots had a gross sales price, if sold individually, of $1,140,000. He estimated the lots could be expected to be sold over a period of 2.5 years. He concluded that a single purchaser of the twelve lots would deduct from the gross sales price expenses for marketing and promotion, real estate commissions, overhead and insurance, real estate taxes, interest on investment and the carrying charges. Based on that analysis and the income capitalization approach, he concluded the fair market value of the lots, sold to a single purchaser on March 5, 1992, the date title vested in plaintiff, was $800,000. Mr. Hunter further testified if it were assumed the 12 lots were sold over a two-year period, their value would be $850,000 and if sold over a one year period, $900,000.
The defendant submitted an appraisal by Miles B. Andrews at the time of judgment indicating a total retail value of the lots sold individually at $1,181,000. However, since he did not testify at the hearing and was not subject CT Page 5254 to cross-examination, his appraisal was not considered by the court.
Defendant's appraiser, Linda C. Kriscenski, who did testify, stated that she had been closely following the rate of lot sales in Farmington Valley during the last quarter of 1991 and the first third of 1992. In her opinion sales nave been increasing in 1992 by 23%. Due to the fact no new subdivisions have come on the market, and the subject lots are desirable, she testified they could all be sold in less than one year. Her estimate of the fair market value of the lots sold individually over that time period was $1,195,000.
Pursuant to 49-14, the court must "establish a valuation for the mortgaged property." It can "consider everything that might legitimately affect value." Uniroyal, Inc. v. Bd. of Tax Review, 174 Conn. 380, 390 (1978) quoted with approval in New Haven Savings Bank v. West Haven Sound Development, 190 Conn. 60, 69 (1983). The court is not bound by the opinion of the expert witness, (Birgel v. Heintz,163 Conn. 23, 30 (1972)), can accept appraiser's testimony in whole or in part, (Fox v. Manson, 189 Conn. 484, 489 (1983)), and when confronted with conflicting evidence on value, can conclude "that under all the circumstances a compromise figure most accurately reflects fair market value." New Haven Savings Bank v. West Haven Sound Development, supra, at 70.
The court finds the fairest market value of the lots can be achieved by selling them individually and they all can more likely than not be sold within one year. Deducting some carrying charges for their sale over that period for real estate taxes, insurance, promotion and interest, this court concludes the fair market value of the lots is $1,140,000.
The court allows plaintiff's counsel fees for the foreclosure and deficiency judgment proceedings of $8,500 and for title search $150, and awards plaintiff an appraisal fee of $3,500. Consequently, the deficiency judgment is calculated as follows:
 Plaintiff's Debt $1,149,074 Counsel Fees, including title fee 8,650 Appraisal Fee 3,500 --------- $1,161,224 Fair Market Value of Property 1,140,000 CT Page 5255 --------- Deficiency Judgment $ 21,224
Deficiency judgment may accordingly enter for $21,224.
SATTER, JUDGE