[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiffs, Daniel C. Maclean and Hildi S. Maclean, pursuant to General Statutes 12-117a (formerly 12-118)[1]
and 12-119, from a decision of the defendant town of Darien Board of Tax Review. The plaintiffs own 2.88 acres of waterfront residential real estate at 25 Contentment Island Road in Darien, consisting of a single family home, plus a swimming pool, bathhouse or cabana and a storage shed. The property has its own sandy beach on the water, and is improved with a residence built in 1916, consisting of ten rooms, including five bedrooms, plus five full baths and a half bath.
On October 1, 1988, in connection with the decennial revaluation required by General Statutes 12-62,[2] the tax assessor of the town of Darien determined that the fair market value of the plaintiffs' property was $2,500,900 ($1,602,500 land and $498,400 improvements), which translated into an assessment of $1,750,630 ($1,121,750 for the land, and $628,880 for the buildings).[3] The plaintiffs appealed this assessment to the defendant Board of Tax Review, General Statutes12-111, which on March 23, 1989, denied plaintiffs' request to reduce the assessment. An appeal to this court followed, which contains two counts, claiming violations of General Statutes 12-117a and 12-119, respectively.[4] The plaintiffs subsequently revised their complaint to appeal the assessed valuations on the lists of October 1, 1989, October 1, 1990, and October 1, 1991. General Statutes 12-118.
"The trial court in a 12-118 appeal hears the case de novo . . . and has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as [it] finds applicable. . ." (Internal quotation marks and citations omitted.) Carol Management Corp. v. Board of Tax Review, 228 Conn. 23, 36, ___ A.2d ___
(1993). General Statutes 12-63 provides that the standard for determining fair market value is the property's "present true and actual value" and "not its value at a forced or auction sale." Fair market value is defined CT Page 10911 as "the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal." (Internal quotation marks omitted.) Uniroyal, Inc. v. Board of Tax Review, 174 Conn. 380, 390, 389 A.2d 734 (1978).
Plaintiffs' expert witness, Lee A. Colbath, an appraiser, testified (i) that the fair market value of the subject premises was $1,787,140 ($1,392,000 for the land, and $395,140 for the improvements); (ii) that the value of Darien realty had decreased by 30% between October of 1986, when the Macleans paid $3,400,000 for their home, and the assessment date of October 1, 1988, and therefore the subject premises, on this basis, would have been worth $2,380,000; (iii) that the home was an expanded cape of average quality; (iv) that the property on Long Neck Point, an adjacent peninsula on Long Island Sound, was more valuable than Contentment Island property, yet the appraisers hired by the town of Darien had used a higher per acre value, $1,250,000, for Contentment Island; (v) that he used the comparable sales method and found sixteen comparables in arriving at his valuation; and (vi) that three comparables, including a sale at 116 Delafield Island Road, were the closest comparables in value to the plaintiffs' property.
Defendant's witness, Joseph A. Cullen, town of Darien assessor, testified that the town had hired Sabre Systems and Service, Inc. (Sabre Systems), of Dayton, Ohio, a certified revaluation company, to conduct the required decennial revaluation. Cullen agreed with the company's methodology and adopted its valuations of property Darien as the town's official figures. Cullen pointed out that the Macleans had purchased their property in October of 1986, and had paid $3,400,000, and that the fair market valuation of $2,500,000 as of October 1, 1988, adequately credited plaintiffs with the admitted decrease in the value of real estate in Darien for those two years. In Cullen's opinion, Sabre System's determination of fair market value of the subject premises was accurate.
An employee of Sabre Systems, Inc., Peter Romanowski, testified that his company had conducted a town-wide mass appraisal, as they had done in other municipalities.[5] With respect to Contentment Island Road waterfront properties, Sabre Systems assigned a per acre value of $1,250,000 for the first acre, plus adjustments for excess acreage. Romanowski also testified that the valuation of the buildings on the plaintiffs' premises were derived by calculating the replacement cost less depreciation of 20%, based on categories or grades of residences. The placement of the Macleans' residence in the category of "high quality" or mansion-type dwelling was disputed by the plaintiffs. CT Page 10912
The Macleans also argue that Sabre System's per acre price of $1,250,000 for the first acre was excessive because the appraisers had used a figure of $1,000,000 per acre for property on Long Neck Point, which had more valuable properties than Contentment Island. The plaintiffs contend that their house was a converted beach house to which several additions had been added on from time to time, and that its designation as grade A-5, a high quality grade of construction, was erroneous.
Defendant's expert witness, Chrys-Ann Young, an appraiser, testified that the subject property had a fair market value of $3,000,000 on October 1, 1988. By utilizing the comparable sales method, this witness valued the buildings at $800,000, including $746,000 for the residence, and $2,200,000 for the land. This appraiser used six comparables and testified that the property most closely approximating the subject premises was her comparable number one, located at 116 Delafield Island Road, which as previously noted, was also used by the plaintiffs' appraiser as one of his three most comparable sales. Young's testimony and report point out (i) that both properties are waterfront, with 116 Delafield located on a peninsula extending into a cove; (ii) that the Delafield property is slightly smaller in size than plaintiffs', 2.62 acres, as contrasted with 2.88 acres; (iii) that the house on Delafield is older than plaintiffs' home as the former was built in 1900, rather than 1916; (iv) that the house at 116 Delafield is smaller than plaintiffs' residence (3,750 square feet of gross living area versus approximately 4,500 square feet for the subject premises); (v) the house on Delafield has fewer rooms, eight versus ten rooms; and (vi) Delafield has no pool. Yet, the 116 Delafield property sold on July 6, 1988, about two months before the assessment date, for $3,200,000, which was the primary basis for Young's opinion that the fair market value of the subject premises was $3,000,000. Young also referred to a sale at 25 Contentment Island Road, comparable number two, which sold for $3,400,000 in October of 1986, and had the same number of rooms, the same amount of land, was constructed the same year as the Macleans' home, and was also a waterfront colonial, with a pool and a cabana. ("It is our opinion that the sales of 1 and 2 are most indicative of the market value").
Young also disagreed with Colbath's contention that the prices of Darien realty decreased by 30% in two years, and said it was more in the nature of 5% per year for two years. This would result in a valuation of $3,060,000, based on the price the Macleans paid in October of 1986.
"[A]t least four methods exist for determining the fair market value of property for taxation purposes: (1) analysis of comparable sales; (2) CT Page 10913 capitalization of gross income; (3) capitalization of net income; and (4) reproduction cost less depreciation and obsolescence. . . See also General Statutes 12-63b. Each of these is an approved method of ascertaining the actual value of real estate for purposed of taxation." Carol Management Corp., supra, 36 n. 15, quoting Second Stone Ridge Cooperative Corporation v. Bridgeport, supra, 342. Although all of these methods have been approved for valuing property, comparing market sales is ordinarily the best method for determining actual value. Uniroyal, Inc. v. Board of Tax Review, 174 Conn. 380, 385-86, 389 A.2d 734 (1978); see also Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 674, 154 A.2d 608
(1959) ("[t]he best test for the determination of value is ordinarily that of market sales").
Defendant's witness Young employed the comparable sales approach in arriving at her opinion that the subject premises, if anything, were undervalued. I agree with plaintiffs that the method used by Sabre Systems, which was hired to conduct a town-wide, mass appraisal, was flawed in the sense that it fails to sufficiently take into account individual characteristics of a particular piece of property. However, in this specific instance, Sabre System's appraisal seems to be reasonably on target.
Even plaintiffs' expert acknowledged that the property was worth $2,380,000 when he used the figure of 30% loss of value as measured by the price the Macleans had paid two years before the assessment date. Moreover, Colbath valued the first acre at 116 Delafield at $1,200,000, plus $300,000 for excess acreage, whereas he valued the first acre of the subject premises at $500,000. This appraiser was not able offer a cogent explanation of his reasoning on this point. He then went on to adjust 116 Delafield upward by $1,100,000 for a "location adjustment" and a"view adjustment," but only added $600,000 to the subject premises for "waterfront." Thus, I found the testimony of the defendant's appraiser as to fair market value more credible.
My sense of the market value of the subject premises, after listening to the witnesses and reviewing the exhibits, including pictures of the plaintiffs' home as well as those of surrounding properties, is that it is between $2,380,000 and $3,000,000, and the defendant's valuation is therefore not excessive. This opinion is fortified by the axiom that "proper deference" and a "wide discretion" should be accorded to the assessor's valuation where both the assessor and the appraiser who valued the property testified. Stamford Apartments Co. v. Stamford, 203 Conn. 586,589, 525 A.2d 1327 (1987); see also Carol Management Corp., supra, 36.
"The process of estimating the value of property for taxation is, at CT Page 10914 best, one of approximation and judgment, and there is a margin for a difference of opinion." Carol Management Corp., supra, 39-40. (Internal quotation marks and citations omitted.) Mindful of this standard, this court concludes that the plaintiffs have not met their burden of proving that defendant overvalued their property on Contentment Island Road. As a result, plaintiffs are deemed not to be aggrieved. "[T]he court must first determine whether the plaintiff has met his burden of establishing that he is, in fact, aggrieved by the action of the board. Only when the court finds that the action of the board will result in the payment of unjust and, therefore, illegal tax, can the court proceed to exercise its broad discretionary power to grant such relief as is appropriate." Gorin's, Inc. v. Board of Tax Review, 178 Conn. 606, 608, 424 A.2d 282 (1979); see also Midway Green Corporation v. Board of Tax Review, 8 Conn. App. 440,442, 512 A.2d 984 (1986) ("[o]nly if the court finds that the property has been overvalued by the assessor can it exercise its power to correct the valuation").
With respect to the second count of the complaint, the plaintiffs have not met their burden of proving that the assessment was "manifestly excessive" and that the defendant "disregard[ed] the provisions of the statutes for determining the valuation of [the real] property . . . Our case law makes clear that a claim that an assessment is `excessive' is not enough to support an action under this statute." (Internal quotation marks and citations omitted.) Carol Management Corp. supra, 31. In this case, the assessment has not been found to be excessive, much less "manifestly excessive."
The fair and actual market value of the plaintiffs' property as of October 1, 1988, is therefore determined to be $2,500,900, and thus plaintiffs' appeal is dismissed. Judgment is entered establishing $1,750,630 as the assessed value of the subject premises on October 1, 1988, representing 70% of market value, and also for subsequent years. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 15 day of December, 1993.
William B. Lewis, Judge