[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
1. Nature of the Proceedings:
This action is an appeal from the Board of Tax Review of the Town of Rocky Hill's refusal to reduce the assessor's valuation on certain property situated in the Town and owned by the appellants, Philip and Carol Ireland.
2. Facts:
On October 1, 1989, the Assessor for the Town of Rocky Hill performed a town wide revaluation of all properties in Rocky Hill. The assessor determined an assessed value of $1,840,200.00 on the plaintiffs' parcel of land. The plaintiffs, Philip Ireland and Carol Ireland, purchased the subject premises (the "premises") located at 1275 Cromwell Avenue, Rocky Hill, Connecticut by Quitclaim Deed from GTT Corp. dated June 30, 1993, for a consideration of $750,000.00. (Plaintiffs' Exhibit A, pages 11 and 12).
The plaintiffs made application to the court to reduce the valuation placed on the premises as of October 1, 1993 and October 1, 1994. As of October 1, 1993, the Town attributed a full fair market value of $2,572,500.00 to the premises. These values represent the Town's opinion of the value of the premises, as improved with the 100% completion of Building A and Building B, on October 1, 1993. As a result of further improvements to the premises, after October 1, 1993, (namely the construction of Building C), the Town increased the full market valuation to $3,775,700.00 as of October 1, 1994.
At the onset of trial it was stipulated to by the parties that the appeal would consider only the fair market value of the improvements known as "A" and "B".
The plaintiff and defendant further stipulated at trial and CT Page 14255 subsequently by written stipulation that due to the 100% completion of Building C to the premises in 1994, the increase in the full fair market value of the premises (Land and Building A, B, and C 100% complete) from October 1, 1993 to October 1, 1994 was $850,000.00.
The plaintiffs offered a written appraisal report prepared by DeLucca Associates dated August 7, 1995. Based on the income approach the written appraisal indicates a fair market value with improvements as of October 1, 1993, related back to October 1, 1989 of $1,500,000.00 (Plaintiffs' Exhibit A, page 34).
Mr. John DeLucca, plaintiffs' expert, testified that he relied upon the income approach to value and that the value of the subject premises with improvements as of October 1, 1993 related back to October 1, 1989 was $1,500,000.00. Mr. DeLucca further testified that as a result of further improvements to the premises, namely the construction and completion of Building C, that the premises with all improvements (Buildings A, B, and C 100% complete) had a fair market value as of October 1, 1994 related back to October 1, 1989 of an additional $850,000.00 for a total of $2,350,000.00.
The defendant offered a written appraisal report prepared by Flanagan Associates dated April 25, 1995. The appraisal indicated that the fair market value of the premises with improvements as of October 1, 1993 related back to October 1, 1989 had a fair market value of $2,639,000.00 (Defendants' Exhibit 1, page 78).
Mr. Robert J. Flanagan, expert called by the Town, who relied on the income approach to value testified that the premises as improved with the inclusion of Building C 100% completed, as of October 1, 1994 related back to October 1, 1989. resulted in an increased fair market value to the premises of $850,000.00 for a total of $3,489,000.00.
3. Discussion:
A. Statement of Applicable Law
This appeal is brought pursuant to Connecticut General Statutes § 12-117a. The plaintiffs claim that the assessment placed on the plaintiff property is, under all circumstances, manifestly excessive and could not have been arrived at except by disregarding the provisions of the Statutes for determining the CT Page 14256 valuation of such property.
The court on an appeal from a board of tax review performs a double function. Hartford Hospital v. Board of TaxReview, 158 Conn. 138, 148 (1969). "First, it must determine the judicial question whether the appellant has been aggrieved by such action on the part of the board as will result in the payment of an unjust and, therefore, a practically illegal tax. Secondly, if that question is answered in the affirmative, the court must proceed to exercise its broad discretionary power to grant relief." Hartford Hospital v. Board of Tax Review, supra. The burden is upon the plaintiff to establish that he has been aggrieved by the action of the board in that his property has been assessed. Gorin's, Inc. v. Board of Tax Review, 178 Conn. 606,608 (1979). It is found that the applicants, as owners of the property at 1275 Cromwell Avenue, Rocky Hill, Connecticut, have proved by a preponderance of the evidence that they have been aggrieved by the action of the Board of Tax Review of the Town of Rocky Hill.
The valuation of property for assessment purposes is a question of fact for the trier. National Folding Box Co. v. NewHaven, 146 Conn. 578, 588 (1959). "This approach is understandable when the safeguards employed in the valuation process are considered. The valuation is first fixed by the assessor; an appeal then lies to the board of tax review. A taxpayer who believes he has been aggrieved by the action of the board of tax review has the further right to appeal to the court pursuant to General Statutes § 12-117, which statute expressly confers upon the court broad discretionary power to grant such relief, whether legal or equitable, `upon such terms and in such manner and form as appear equitable.'"
Conn. Gen. Stat. § 12-63 provides: "[t]he present true and actual value of . . . [the] property shall be deemed by all assessors and boards of tax review to be the fair market value thereof and not its value at a forced or auction sale." Fair market value is generally defined as "the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under a compulsion to make a deal."Uniroyal, Inc. v. Board of Tax Review, 174 Conn. 380, 390 (1978). In determining value, the court must consider everything that might legitimately affect value. Id. The court determines its "own conclusion as to the value of land by weighing the opinions of the appraisers, the claims of the parties in the light of all CT Page 14257 the circumstances in evidence bearing on value and [its] own general knowledge of the elements going to establish value . . . No single method of valuation [is] controlling." Esposito v.Commissioner of Transportation, 167 Conn. 439, 441 (1974);O'Brien v. Board of Tax Review, 169 Conn. 129 (1975).
"If the Court finds that the property has been in fact over-valued, it has the power to, and should, correct the valuation." Connecticut Savings Bank v. New Haven, 131 Conn. 575,584-86, 41 A.2d 765 (1945); Hutensky v. Avon, 163 Conn. 433,436-37, 311 A.2d (1972).
"The Trier may accept or reject the testimony of an expert, offered by one party or the other, in whole or in part." Smith v. Smith, 183 Conn. 121, 123, 438 A.2d 842
(1981); Richard v. A. Waldman Sons. Inc., 155 Conn. 343, 348,232 A.2d 307 (1967); Filippetti v. Filippetti, 2 Conn. App. 456,459, 479 A.2d cert. denied 194 Conn. 804, 482 A.2d 709
(1984).
"Only when the court finds that the action of the board will result in the payment of an unjust and, therefore, illegal tax, can the court proceed to exercise its broad discretionary power to grant such relief as is appropriate." Executive SquareLimited Partnership v. Board of Tax Review, 11 Conn. App. 556,569 (1987) (quoting Gorin's Inc. v. Board of Tax Review, supra. "In accordance with such review, the law contemplates that a wide discretion is to be accorded to assessors." Id. at 569-570 (citing UniRoyal, Inc. v. Board of Tax Review, supra, 619.
Thus, the Town of Rocky Hill Assessors' value of $2,572,500.00 reflects its opinion of the value of the property and is entitled to great weight. An assessor's opinion and judgment should control in the determination of value for taxation purposes. Federation Department Stores, Inc. v. City ofStamford, 162 Conn. 77 291 A.2d 715 (1971).
"The burden is on the plaintiff to demonstrate that the assessor's valuation was not the true and actual value of the property." Executive Square Limited Partnership, supra at 571. It is not the assessor's burden to support his/her valuation.Burritt Mutual Savings Bank v. New Britain, supra, 675.
A. Factual Findings
CT Page 14258
Both sides prepared and presented their cases based upon the value of the plaintiff's property as of October 1, 1989. Therefore, plaintiffs' appeal is considered to be an appeal of the valuation established by the Town with improvements as of October 1, 1993 and October 1, 1994 related back to October 1, 1989.
In their appraisal and testimony both appraisers acknowledged that the purpose of any appraisal is to determine market value. In making their respective market value determinations both appraisers stated that their primary approach was the Income Approach.
DeLucca said that the cost approach was considered but not used whereas Flanagan said that because typical buyers are sometimes motivated by the result of the cost approach for newly constructed properties, and the subject property was newly constructed, the cost approach was employed in his appraisal but the least relied on. Insofar as the sales comparison approach was concerned, DeLucca said that it was utilized whereas Flanagan stated that it was processed in his appraisal and utilized as a means of supporting the income approach.
However, the direct sales comparison approach was employed by Flanagan and DeLucca in estimating the market value of the subject site. The court having considered all of the relevant evidence, both testimonial and documentary, finds the value of the subject site to be $495,000.00 arrived at as follows:
 3.28 dev. ac. x $80,000/acre $262,400 1.40 acres for Bldg "C" x $80,000/acre 112,000 2.68 excess acres founds. x $40,000/acre 107,200 3.34 acres of cons. easement x $4,000/acre 13,360 --------- Site Value-rounded to 495,000
The court concurs with both appraisers that the income approach was the best method for determining the market value of the subject property as of October 1, 1989.
The principal difference between the two appraisals is that Mr. Flanagan used a Discounted Cash Flow analysis over a five-year period, while Mr. DeLucca chose an overall rate or Direct Capitalization approach. CT Page 14259
In developing his income approach, Flanagan utilized a Discounted Cash Flow. In support of the Discounted Cash Flow ("DCF") method, Flanagan testified that this method more accurately reflects the types of information a prudent investor would consider. In analyzing a potential investment in income-producing property the court agrees that an investor would want to project the performance of the property over a span of years.
In the present instance a span of five years was chosen by Flanagan and the court concurs that it was appropriate to do so. The basis for this choice is that investors would look no further into the future to attempt to determine what a property will do over time as an investment.
Market data indicates that as of October 1, 1989 investors were not assuming a level market for the future. In 1989, investors in income-producing real estate were projecting increasing value levels as part of their investment decision.
In 1989 the intensity of the market's precipitous decline of the early nineties could not be determined. The severity of the economic downturn in Connecticut, in the court's opinion, caught the overwhelming majority of investors by surprise. The court concurs with Flanagan that the market data which can be gathered for 1989 does not reflect the prior knowledge of investors of the sharp economic decline that occurred in the early 1990's.
In contrast to the DCF method utilized by Flanagan, DeLucca utilized an overall capitalization rate. This method deters his ability to reflect the realities of the market and the thinking of investors. Among the deficiencies found in DeLucca's method is the use of a constant vacancy rate of 25 percent. While Flanagan agreed that a first year rate of 25 percent would be a good number because this was new construction, he stated unequivocally that it is absolutely incorrect to assume that an investor in 1989 would have projected a constant 25 percent vacancy rate. On the contrary, Flanagan asserted that an investor would have expected that the vacancy rate would be reduced as the building became established. Mr. Flanagan, unlike Mr. DeLucca, reduced the vacancy rate over a period of five years so as reflect the expectations of an investor and this court fully concurs with that assumption. CT Page 14260
Additionally, DeLucca assumed that Net Operating Income ("NOI") would remain level and this court finds that assumption unwarranted as investors would expect NOI to increase over a five year time period.
Moreover, Flanagan faults DeLucca for including taxes in his listed expenses. The court agrees that it is difficult to imagine how one would attempt to find market value by including the taxes. The purpose of an appraisal for a tax appeal is to determine market value so as to determine the appropriate taxes. Mr. DeLucca inserts taxes based upon a value, as opposed to establishing a value to determine taxes. Additionally, Mr. DeLucca used the actual taxes, the amount of which is the basis of the appeal. The appellants, in the court's view, cannot argue the taxes are too high while at the same time utilizing the taxes to increase their expenses.
Mr. DeLucca's appraisal uses a figure of $10.00 per square foot for rent on 37,000 square feet, while Flanagan uses a figure of $9.00 per square foot on 36,900 square feet. In the court's opinion Flanagan gives a rational explanation for the estimated expenses used whereas DeLucca gives no basis whatsoever for the projected expenses. Additionally, Flanagan projects income and expenses over a five year period whereas DeLucca does not and the court agrees that an investor would.
The court notes that Flanagan has a MAI designation whereas DeLucca possess an SRA and a SRPA designation. The SKA, SRPA designation is one step inferior to the MAI designation. The court also notes that Flanagan presented himself as a credible witness who gave honest, articulate answers and his testimony and report are accordingly credited and given substantial weight by the court.
Although DeLucca has testified in a tax appeal trial before this court and his testimony and report credited, this court finds the testimony and report of Flanagan more credible in this particular case given the nature and type of property involved.
In the court's opinion the appellants offered little, if any, evidence to contradict or rebut the essential elements of Flanagan's testimony, which were:
1. Market value is best determined by a Discounted Cash CT Page 14261 Flow analysis as it reflects the actions of investors;
 2. Plaintiff's appraisal undervalues the subject property by using the actual taxes as an expense;
 3. Investors, in October of 1989, were not aware of and thus not acting in anticipation of the precipitous decline in the market which occurred in 1990;
 4. Discounted Cash Flow is a method relied upon by assessors to provide the best indication of market value.
The court as the trier of fact does not however totally agree with the opinion of Flanagan. Flanagan assumed a discount rate of 9.2% and added an effective tax rate of 1.3 for a total discount rate of 10.5%. (Plaintiff's Exhibit 1, Page 77). He further testified that this total discount rate was justified as a result of his experience and the publication of the discount rate in the magazine known as the "Appraiser for 1989". However, Mr. Flanagan testified that his was a national publication with national discount rates and that he did not have any specific knowledge of a publication of a discount rate for the northeast region. Mr. Flanagan also testified that other appraisers utilized higher discount rates for the same time frame based upon their experience and expertise.
In the court's opinion a slightly higher discount rate than 9.2% is warranted.
Additionally, although the court agrees that a declining vacancy rate is warranted, it is the considered judgment of the court that a higher vacancy rate than 5% is warranted in the fifth projected year.
3. Conclusion:
For the reasons herein stated, it is the conclusion of this court that the plaintiff has proved by a preponderance of the evidence that the assessment of the property known as "A" and "B" fails to reflect 70 percent of said property's true and actual value on the assessment dates of October 1, 1993, and October 1, 1994, but is grossly excessive, disproportionate and unlawful.
As to Count 1 of the Amended Complaint, it is adjudged CT Page 14262 that the true and actual value of "A" and "B" with improvements as of October 1, 1993 related back to October 1, 1989 is $2,398,300.00.
As to Court 2 of the Amended Complaint, it is adjudged that the true and actual value of "A", "B" and "C" with improvement as of October 1, 1994 related back to October 1, 1989 is $3,248,300.00. It is further adjudged that the Board of Tax Review of the Town of Rocky Hill correct the assessment against the applicant accordingly.
It is so ordered.
Arena, J.