[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 4968
This matter concerns the applicant's appeal from a determination by the Milford Board of Tax Review as to the valuation and assessment of residential property located at 47 Hillside Avenue within said town. The plaintiffs purchased the property on October 30, 1991 and remain the record owners at this time. Accordingly, the plaintiffs are found to be aggrieved parties with standing to pursue this appeal as admitted in the defendant's answer of March 3, 1995.
The Grand List of October 1, 1993 established the valuation of the plaintiff's premises at $231,000 and using the 70% assessment rate determined the value of the property for tax purposes to be $161,700. The plaintiffs petitioned to the Board of Tax Review claiming that such assessment was excessive but to no avail as the Board of Tax Review declined to alter the assessed value as determined by the town assessor. The plaintiff brings this action claiming the assessment was not the true and actual value of the property but, in fact, was excessive and the taxation at 70% of that evaluation was likewise excessive.
In support of this claim, the plaintiff J. Brady Garber (a co-owner of 47 Hillside Avenue by deed of October 30, 1991 — Plaintiff's Ex. 1) testified that he and Philip Allocca purchased the property from their grantor, 47 Hillside Avenue Associates Partnership, on October 30, 1991 at a purchase price of $160,000 and that this figure best represents the true and actual value of the property. Additionally, he offered the testimony of one Mark Nadeau, a real estate appraiser who found the value of the property to be $168,000 as of October 1, 1991, slightly in excess of the price paid for the property. Nadeau observed that the property in question was somewhat diminished in value because of its physical condition, a smaller lot size, and while it is waterfront property, its "beachfront" consisted of a rather substantial concrete abutment or seawall as reflected in Plaintiff's Exhibit Seven. Nadeau opined that using a cost approach for valuation, he came up with $225,000 but didn't feel that this was a reliable method of valuation as subjective values of "view" came into play with waterfront property. He did in the process of reaching his opinion use sales of what he felt to be comparable properties, "the market approach", as well as his personal familiarity with some of the recent transfers of property near the property in question. He also expressed the opinion that the price paid for the property by the appellants CT Page 4969 was a sound measure and perhaps the most important factor in evaluating the property. A detailed explanation of his appraisal is reflected in Plaintiff's Exhibit Six.
The plaintiffs claim that by not using the purchase price of the property as being the best measure of its value the Board erred in their refusal to adjust the assessor's appraiser accordingly.
The defendant through its assessor, William Gaffney, offered evidence by way of market approach analysis that as of October 1, 1991 the property had a value of $240,150 (Defendant's Ex. 5). He felt, as assessor, that the price paid for the property was not a true measure for valuation of the property as it did not appear to him to be an "arm's length" transaction. He felt that other properties in a like physical condition, i.e. "rundown" sold for more and that this transaction did not reflect the actual value of the property because the sellers did not attempt to get the "best possible price" by being patient but rather were interested only in a "quick sale".
As regards to circumstances surrounding the sale of the property to the applicants, the evidence offered to the court demonstrated that the property came into their ownership following a foreclosure where the Small Business Administration obtained title and thereafter conveyed the property to a partnership which in turn conveyed it to the plaintiffs. The partnership paid $120,000 for the property and after some negotiations between the parties title passed for $160,000. There was no evidence offered to suggest that the transaction was anything other than between strangers. The property came to the attention of the buyers by way of a newspaper ad placed by real estate brokers acting for the sellers "see Defendant's Ex. One) and the buyers sought the services of another realty firm to obtain further information concerning the property.
From this evidence the court concludes that the purchase of this property was an "arm's length" transaction and that the price agreed upon and paid is a valid indicator of the fair market value of the property. See Uniroyal, Inc. et al v. Boardof Tax Review of the Town of Middlebury, 174 Conn. 380, 385.
While the assessors determination of fair market value is entitled to significant credence (see Burritt Mutual Savings Bankv. New Britain, 146 Conn. 669, 675), it appears in this case that CT Page 4970 the assessor's valuation was substantially in excess of the fair market value of the property and that the Board was in error in not adjusting the assessment. The court concludes that the valuation of the property should be reduced from the figure of $231,000 to the figure of $161,700 and the assessment at 70% be reduced accordingly.
The parties have agreed that improvements made to the property since October 1991 and resultant increases in valuation will not be affected by the judgment entered as relates to the issues raised in this application.
Judgment may enter sustaining the appeal together with costs.
George W. Ripley Judge Trial Referee