[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Arnold Foods Company, Inc., appeals from the doings of the Board of Assessment Appeals of the Town of CT Page 11939 Greenwich pursuant to Connecticut General Statutes. §§ 12 117a and 12-119[1], seeking to reduce the defendant's valuation of the plaintiff real property on the assessment list of October 1, 1993. The plaintiff also seeks reduction for subsequent tax years, including assessments on the Grand List of October 1, 1994 through October 1, 1997.
 I.
The plaintiff in March, 1993 received notice from the defendant's assessor that the assessed value of its property, as of the assessment day of October 1, 1992, was $13,686,190 including land and buildings.[2] At 70% of value this figure indicates a determination by the assessor that the fair market value of the plaintiff's property as of October 1, 1992 was $19,551,700. The plaintiff duly appealed the assessment to the Board of Assessment Appeals which refused to change the assessment, and the plaintiff filed this appeal.
The subject property contains 20.346 acres and is located on the north side of Hamilton Avenue in Greenwich in a General Business Zone. The use of the property is as an industrial bakery, and is legally non-conforming. The main building is a two-story masonry and steel frame industrial building with a third floor mezzanine, built in 1965, containing 420,504 square feet. There is a two story masonry and steel frame office building of the same vintage containing 41, 612 square feet., and a retail one-story masonry retail sales building containing 1,760 square feet. The total area of the improvements is 463,876 square feet.
At trial, the plaintiff presented its appraiser, Michael B. Gold, a member of the Appraisal Institute, who testified that in his opinion the fair market value of the plaintiffs property as of October 1, 1992 was $13,200,000. The defendant, too, called upon an expert to testify, being Robert J. Flanagan, also an MAT, who corroborated the town's figure and appraised the property at $19,640,000 as of the same assessment date. With these two experienced MAT experts being $6,440,000 apart in their estimate of value, it devolves upon the court to determine the true fair market value of the property. "The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances and evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property." O'Brien v. Board of Tax Review,
CT Page 11940169 Conn. 129, 136, 362 A.2d 914 (1975).
As indicated in their appraisal reports, both appraisers relied on the comparative sales approach to value, as well as the income approach. "Fair market value is generally best ascertained by reference to market sales . . . [a]s a rule, however, no one method is controlling; consideration should be given to them all if they have been utilized in arriving at the value of the property." [Citations omitted; internal quotation marks omitted]Uniroyal, Inc. v. Board of Tax Review, 174 Conn. 380, 385-386,389 A.2d 734 (1978). It is fair to say that both appraisers in their testimony and in their written appraisal reports, discussed primarily the comparative sales approach to value, and then attempted to verify it by reference to the income approach. The method by which each appraiser employed the comparative sales approach accounts for the huge disparity between their opinions of value. Simply stated[3], the Gold (plaintiffs appraiser) approach involved using three comparable sales and two listings in Fairfield County and, after adjusting for the differences, arriving at fair market value for the subject property. On the other hand, Mr. Flanagan (defendant's appraiser) chose as comparables, property in other areas of Connecticut, backed out their land values, and then added the land value of the Greenwich site to the improvements value to reach total value.
Because the court accepts the opinion of the plaintiffs appraiser, it finds that its property has been overassessed and therefore the plaintiff has been aggrieved by the action of the Board of Assessment Appeals. "In a 12-117a appeal, the trial court performs a two-step function. The burden, in the first instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the Board in that his property has been overassessed. In this regard mere overvaluation is sufficient to justify redress under [12-117a], and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation. Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier. "[Citations omitted; internal quotation marks omitted] Konover v.Town of West Hartford, 242 Conn. 727, 734-735, 699 A.2d 158
(1997).
In employing the comparative sales approach, the plaintiffs appraiser used the standard method of choosing comparable sales, and then, by identifying significant factors differentiating the subject property from the sales and listings used, made upward or CT Page 11941 downward adjustments, and arrived at a fair market value for the property in question. Mr. Gold recognized in his appraisal report that the plaintiffs property has a specialty use as a bakery and, with its multi-level building, represents an atypical building design not readily adaptable to alternate light industrial use. He further opines that larger industrial properties such as the one in question have a more limited market and tend to cost less per square foot. Accordingly, this appraiser finds the two most significant factors distinguishing the subject property from the comparable sales to be utility and scale. The court finds these opinions to be reasonable. Mr. Gold also considered factors such as the condition of the improvements, expansion potential and story height in making his adjustments to value. The court also finds that the sales and listings chosen by Mr. Gold are reasonably classified as comparable to the plaintiffs property for purposes of the comparative sales approach to value. They are all located in Fairfield County[4] and consist of industrial/office/warehouse-type properties on land zoned for industrial use. By dividing the sales/listings prices by the building area, and after making the adjustments for significant differences, Mr. Gold arrived at a value per square foot of the plaintiffs property of $28.44, including land. There being 463,876 square feet of buildings the Gold fair market value for the plaintiffs property is, rounded, $13,200,000.
Mr. Flanagan's approach was different. Finding what he said were no valid comparables in the vicinity of the subject property, he turned to properties in Groton, Enfield, Berlin and Norwich. Concluding that the sales prices of comparable buildings in those towns do not recognize Greenwich land values, he deducted what he believed to be the land values of the respective sites, and then made, by adjustments, value judgments for the buildings and came to a square foot value for the subject building improvements of $33.25. This translates to building improvements value for the 463,876 square feet of building of $15,423,877. To this, Mr. Flanagan then adds back the Greenwich site value of $4,212,000 for a total value, per the comparative sales approach, of $19,636,000.
"If a tax payer is found to be aggrieved by the decision of the Board of Tax Review, the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property. . . . If the court finds that the property has been in fact overvalued, it has the power to, and should, correct the valuation." [Citations omitted; internal quotation marks omitted] Konover v. Town of West Hartford, supra, CT Page 11942242 Conn. 735-736.
The court finds the testimony and appraisal evidence presented by the plaintiffs appraiser to be reasonable and credible, more so than that of the defendant's appraiser. The comparable sales and listings chosen by Mr. Gold were appropriate, and he used reasonable standards in differentiating them from the subject property. The defendant's expert reached out to distant areas of the state to find comparable sales because he determined that there were none in the vicinity of the subject property. This required him to separate out land values from his comparables. This would not have been necessary had the defendant chosen more comparable sales such as those found by Mr. Gold in Fairfield County. Thus, Mr. Flanagan's opinion of value is less reliable than that of Mr. Gold. Mr. Gold also used the income approach to test the accuracy of his comparative sales approach. The court has reviewed the method employed and the calculations and find them to be a reasonable application of the income approach to value.
A trial court is free to accept the expert testimony of one party and to reject that of the other. This is a "proper exercise of the trier's function . . ." when the evidence to which greater credence was given is not unreasonable. Connecticut Light PowerCo. v. Monroe, 149 Conn. 450, 455, 181 A.2d 181 (1962).
The defendant exhorts the court to give "proper deference" to the assessor's valuation, citing the Supreme Court's language inStamford Apartments Co. v. Stamford, 203 Conn. 586, 525 A.2d 1327
(1987). "Proper deference must be given to the judgment and experience of assessors. The law contemplates that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes." [Citations omitted; internal quotation marks omitted] Stamford ApartmentsCo. v. Stamford, supra, 203 Conn. 589.
In this case, however, the valuation was performed not by either of the two assessors who testified, but by K.V.S. Valuation System. No one from that organization testified as to the bases of their opinion of value. The present assessor was not an employee of the town at the time of the revaluation. The Supreme Court has further stated "[w]hile we have recognized that proper deference should be accorded to the assessor's valuation, CT Page 11943 we have never characterized such deference as a presumption in favor of the validity of the assessment which is the plaintiffs burden to rebut." Stamford Apartments Co. v. Stamford, supra,203 Conn. 589. In this case, the court is not compelled to defer to the assessor's opinion.
Having found the testimony of the plaintiffs expert to be reasonable, the court finds the fair market value of the plaintiffs property as of October 1, 1992 to be $13,200,000.
 II.
The plaintiff filed a revised complaint dated September 17, 1998 seeking to add the assessment years of 1996 and 1997 to his complaint. The defendant objects, noting that the plaintiff never appealed the 1996 and 1997 assessments to the Board of Assessment Appeals and therefore cannot succeed in its claim for relief as to those tax years.
The plaintiff bases its argument that its amendment is proper upon Connecticut General Statutes § 12-117a, and the language that reads:
 "If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the Board of Tax Review or Board of Assessment Appeals, as the case may be, to make such amendment effective." C.G.S. 12-117a.
The issue is whether an applicant may amend its appeal pursuant to § 12-117a to include subsequent tax years when there is new construction and improvements made during the subsequent years. The plaintiff responds in the affirmative, alleging in its revised complaint that the assessments utilized by the defendant on the Grand List of October 1, 1993 were used as assessments for those of October 1, 1994 through October 1, 1997, "with the minor exception of an adjustment to the valuation of the principal structure on the premises due to the modification, to which adjustment and the resulting increase in valuation plaintiff has no objection." The defendant argues that the plaintiff cannot amend its appeal to include a subsequent year with different assessments due to improvements; that there were not "minor exceptions" to the assessment, but rather CT Page 11944 substantial increases; that the improvements made in the new addition resulted in an increase in assessment due to an increase in the condition and the utility of the property. Thus, the defendant contends that the new assessment is one of the entire property as improved and added on to, and there was neither an appeal taken by the plaintiff to the Board of Assessment Appeals, nor any evidence presented by the plaintiff as to the value of the improved property.
In the tax years 1996 and 1997, $3,700,000 of building permits were taken out by the plaintiff, and improvements were made pursuant thereto including 34,000 square feet in additional floor space. As a result, the assessor increased the fair market value of the property from $19,551,700 to $22,334,200 in 1996, and to $23,499,200 in 1997. This means that the assessment was increased from $13,686,190 to $15,633,940 in 1996 and to $16,449,440 in 1997. Thus, by the time of the 1997 assessment year, the assessor had increased the fair market value of the entire property by $3,947,500.
The plaintiff believes that this scenario is one envisioned by the Connecticut General Statutes § 12-117a language that allows, when a new assessment year begins, the applicant to amend his application "as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year. . . ." Connecticut General Statutes § 12-117a. Although the plaintiff alleges in its revised complaint that it has no objection to the 1996 and 1997 increases in valuation, it apparently is asking the court to reduce the 1996 and 1997 assessment in the same proportion as it has reduced the 1993 assessment. The defendant urges the court to find that §12-117a is not applicable when the assessment has been changed by improvements in subsequent years. The cases cited by the defendant are inapposite because they do not address the pertinent language in the present version of § 12-117a
dealing with the applicant's right to amend its appeal. The court finds that the plaintiff is entitled to revise his complaint pursuant to § 12-117a and the defendant's objection thereto is overruled.
However, this does not mean that the plaintiff is automatically entitled to a reduction in the assessment of the 1996 and 1997 tax years. The court finds that the plaintiff has a right under § 12-117a, to enjoy the reduced assessment granted by the court for the 1993 tax year, and all subsequent tax years. However, the plaintiff is obligated to prove that the CT Page 11945 defendant overvalued its entire property, and not just the improvements and addition of 1996 and 1997. The assessor found that, due to the increased condition and utility of the total property, its value was increased by nearly $4,000,000. If the plaintiff wishes the court to find differently, it must present evidence to establish it. After all, the plaintiffs appraiser used as significant downward factors in analyzing his comparable sales, the condition and utility of the plaintiffs building. The court cannot be asked to speculate that the plaintiffs appraiser would have applied these negative factors in the same percentages had he addressed them after the building had been improved and expanded. The town's assessor, Harriet Wieboldt, testified that the rental value of the property had increased as a result of the improvements and expansions, yet the plaintiff did not present evidence to rebut that and the court is left to wonder how Mr. Gold's income approach to value would have been affected. In other words, the court has no basis, other than speculation, upon which to reduce the defendant's assessment of the plaintiffs property on the list of 1996 and 1997.
Since the plaintiff neither appealed the new assessments on the list of 1996 and 1997, nor proved as alleged in its revised complaint that those assessments were excessive, the court must accept the defendant's valuations for those years, and will add the assessor's increases in value to the value found by the court for the 1993 tax year. Accordingly, the court finds the true and actual value of the plaintiffs property on the October 1, 1992 assessment date to be $13,200,000, and orders that the assessment be reduced to 70% of that value on the lists of October 1, 1993, October 1, 1994, and October 1, 1995. The court further finds the true and actual value as of October 1, 1996 to be $15,982,500 and orders that the assessment be reduced to 70% of that value on the list of October 1, 1996. The court finds the true and actual value as of October 1, 1997 to be $17,147,500 and orders that the assessment be reduced to 70% of that value on the list of October 1, 1997, and for all subsequent years.[5]
So Ordered.
D'Andrea, J.